[No. 4317.   Decided February 25, 1903.]

CITY OF SEATTLE, *Respondent,* v. R. W. BARTO, *Appellant.*

MUNICIPAL CORPORATIONS — ORDINANCES — SINGLENESS OF OBJECT.

An ordinance regulating and licensing the carrying on of business by auctioneers, second-hand dealers, bill posters, hotel runners, pawn brokers and persons engaged in the temporary sale of goods cannot be regarded as enumerating more than one object of legislation, as it has as its general purpose the protection of

the public against certain occupations deemed inimical to the public good if allowed to be conducted without restrictions.

SAME — SUFFICIENCY OF TITLE.

Where the title of an ordinance states that it is "an ordinance to license and regulate certain trades and occupations in the city," it sufficiently expresses the object of the ordinance without enumerating in the title the several occupations mentioned in the body of the act.

SAME — PAWNBROKERS — LICENSE FEES — EXCESSIVENESS.

A license fee of $100 per annum upon the business of pawn-broking cannot, as a matter of law be said to be arbitrary and excessive, and therefore a tax on business, but, such business being a proper subject of police regulation, it is within the province of the municipality to make the business bear the cost of surveillance, the fairness of which the courts will not inquire into on any mere difference of opinion between the municipal authorities and those engaged in the regulated business, in the absence of any proof on the question of the excessiveness of the charge.

Appeal from Superior Court, King County.—Hon. ARTHUR E. GRIFFIN, Judge. Affirmed.

*Tucker & Hyland*, for appellant.

*Ellis De Bruler*, for respondent.

The opinion of the court was delivered by

FULLERTON, C. J.—The appellant was convicted of the offense of engaging in the business of a pawnbroker in the city of Seattle without first having procured a license therefor, as required by an ordinance of the city, and from the judgment of conviction appeals. The question presented by the record is the validity of the ordinance under which the conviction was had. The several objections made we shall notice in order.

It is said first that the ordinance contains more than one object. The charter of the city of Seattle (Freeholders' 1896, art. 4, § 10) contains the following provision: "Every legislative act of this city shall be by ordinance.

Every ordinance shall be clearly entitled and shall contain but one object, which shall be clearly expressed in its title." The ordinance in question is entitled as follows: "An ordinance to license and regulate certain trades and occupations in the city of Seattle, providing penalties for the violation thereof, and repealing all ordinances inconsistent therewith." The body of the ordinance contains provisions relating to the licensing and regulation of various trades and occupations, among which are auctioneers, second hand dealers, billposters, hotel runners, persons engaged in the tempory sale of goods, and the business engaged in by the appellant, that of a pawnbroker. The contention is that these several trades and occupations are so far distinct as to require that legislation governing and regulating them be by several and distinct ordinances, and that they cannot be joined in one ordinance, no matter how specific the title of that ordinance may be made. But it was not intended by the requirement contained in the charter that the city council should not pass an ordinance having a general object, and bring within its terms all matters pertaining to that object, whether it embrace a number of persons or a variety of trades and occupations. The term "object" was not used in the sense of "number" or "variety," nor was it intended to require a distinct legislative act for each particular matter legislated upon. It was intended to prevent the union in one act of diverse, incongruous, and disconnected matters, having no relation to or connection with each other, but was not intended to prevent the law-making power from enacting under a general title provisions affecting a variety of matters, so long as there is a natural connection between the several matters and the object named in the title. As was said by this court in *Marston v. Humes*, 3 Wash. 267 (28 Pac. 520), when

speaking of the use of the words "subject" and "object" as used in constitutions with reference to legislative enact-ments:

"There are two ways in which the words thus used can be interpreted. One is to hold that the word 'subject' is not capable of further reduction; the other is to hold that it means a single subject in a more enlarged sense, in which may be included a large number of sub-subjects. To hold that the constitution makers intended the first interpretation would be to convict them of intention to so tie the hands of the legislature as to make legislation extremely difficult, if not impossible; while the other construction will substantially subserve the object which they had in view and at the same time leave the legislature free to legislate in a reasonable manner. I am of the opinion that the legislature must be the judge of the scope which they will give to the word 'subject,' and that so long as the title embraces but one subject it is not inimical to such constitutional provision, even although the subject as thus used contains any number of sub-subjects. As I have suggested, any other rule would make legislation practically impossible. I do not suppose it will be contended that a title would be void which provided that the enactment was to be upon the subject of pleading. It will be admitted by almost every one that that was a single subject, yet if we construe the word in its more narrow sense it contains many subjects, and the title would be clearly bad, and the legislature would be driven to enact separate laws upon the subject of complaints, answers, replies, etc., etc. If we hold 'pleading' to be a sufficient identification and unification of the subject, it is because we say the legislature has seen fit to make that a single subject. Again, it would hardly be contended that it is not competent under the provision in question for the legislature to enact as a single law a code of civil procedure, and that an act entitled 'An act to provide a code of civil procedure' would be invalid, yet under this subject innumerable subheads and subjects can easily be carved out. Such title is good because the legislature has seen fit to take a comprehensive

subject which can properly cover all of such subjects. If the legislature can thus by a name sufficiently comprehensive embrace all of the subjects properly relating to civil procedure, it must follow that by adopting a subject sufficiently general it can embrace in one act all the statute law of the state. In other words the legislature may adopt just as comprehensive a title as it sees fit, and if such title when taken by itself relates to a unified subject or object, it is good, however much such unified subject is capable of division."

So Mr. Cooley, in his work upon Constitutional Limitations, uses this language:

"The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it." Cooley, Constitutional Limitations (6th ed.), p. 172.

Under the rules here announced, the ordinance in question contains nothing not germane to its title. Its purpose was to regulate certain trades and occupations deemed inimical to the public good if allowed to be conducted without restrictions. It had, therefore, a general purpose, namely, the protection of the public, and but one object within the meaning of the charter provision.

The next objection is that the title of the ordinance does not sufficiently express its object. This seems to be based upon the fact that the several occupations mentioned in the body of the act, and for which licenses are required, are not enumerated in the title but are covered, if covered at all by the general designation of "certain trades and occupations." But a title, to be sufficient, need not be an index to the provisions of the ordinance. It is sufficient

if it gives such notice of its object as to reasonably lead to an inquiry into its body. "The purpose of the title is only to call attention to the subject-matter of the act, and the act itself must be looked to for a full description of the powers conferred." *Lancey v. King County,* 15 Wash. 9 (45 Pac. 645, 34 L. R. A. 817). The title of the act in question is thus specific. It calls attention to the fact that there are trades and occupations which cannot be pursued in the city of Seattle without a license, and one examining the title would not be justified in passing it by on the supposition that it contained nothing affecting the business of a pawnbroker.

Lastly, it is said that the fee exacted by the ordinance for the privilege of engaging in the business of pawnbroking is so excessive as to amount to a tax upon the business, and, being a tax, is in violation of § 5 of art. 7 of the state constitution. But we think the constitutional question here suggested is not before us. The amount of the license fee fixed by the ordinance for the business of pawnbroking is one hundred dollars per annum. There is nothing in the record to show what the actual costs are, or what a reasonable charge would be, for enforcing the regulations prescribed, and we are asked to say, as a matter of law, that the amount fixed is so far in excess of any sum that could be legitimately charged for regulating the business as to enter the domain of taxation. We do not feel that we are authorized to do this in the case before us. It is not doubted that the business of pawnbroking is a proper subject of police regulation, nor is it doubted that it is within the province of the municipal authorities to make the business bear the costs of such regulation. As these costs must be prescribed in advance, they must of necessity be based upon estimates which it is the right

and duty of the municipal authorities to make. The courts cannot, therefore, on any mere difference of opinion as to the amount necessary to meet these costs, say that they are excessive. They must be shown to be so by evidence, or else they must be so exorbitant and arbitrary as to leave no room for two opinions on the matter—so exorbitant and arbitrary as to show that they could not have been based upon any possible estimate of the probable cost. The amount of the fee in question here is not subject to these objections. It cannot be said that it will exceed even the actual cost of surveillance, much less can it be said it is excessive or arbitrary.

Finding no error in the record, the judgment will stand affirmed.

MOUNT and DUNBAR, JJ., concur.