[No. 7038. Decided December 10, 1907.]

REEVES AYLMORE, *Appellant*, v. THE CITY OF SEATTLE *et al.*, *Respondents*.[1]

STATUTES—EMBRACING MORE THAN ONE SUBJECT—MUNICIPAL COR-PORATIONS—IMPROVEMENTS. Laws 1905, p. 300, giving additional power to cities with respect to public utilities, does not violate the constitutional prohibition against embracing more than one subject from the fact that it authorizes cities to acquire and conduct distinct public utilities, such as water works, sewerage systems, light and power plants, and railways, which are independent of each other.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—PROCEEDINGS—BONDS—VALIDITY. Bonds for a municipal water system, authorized at a special election, are invalid where the ordinance proposed for their payment a fund created by seventy-five per cent of the gross revenues of the existing system sufficient to pay accruing interest to January 1, 1909, and thereafter by diverting $175,000 per annum, exclusive of revenues from water used for municipal purposes, and the proposition submitted to the voters was to pay into the fund $175,000 out of the gross revenues of the system without any deductions; the statute requiring that the plan for raising revenues be submitted to the voters.

SAME. A statute requiring a "fixed proportion" of the revenues from a water system to be set apart to meet accruing interest and the obligation as it matures, is not complied with by setting aside $175,000 out of the gross revenues or out of seventy-five per cent of the gross revenues.

[1]Reported in 92 Pac. 932.

SAME—INJUNCTION AGAINST ISSUANCE OF BONDS—DEFENSES. It is not an answer to a suit to enjoin the issuance of municipal bonds that the voter is not injured if the city grants less than the vote authorized; since defects or irregularities interfere with an advantageous sale of the bonds.

SAME—SALE OF BONDS—TIME FOR PAYMENT. It is not a valid objection to the issuance of municipal bonds that the city agreed with the purchaser that the bonds were not to be paid for until the money was needed in the prosecution of the work contemplated.

Appeal from a judgment of the superior court for King county, Albertson, J., entered September 6, 1907, in favor of the defendants, upon sustaining a demurrer to the complaint, dismissing an action to enjoin an issuance of bonds in aid of a municipal improvement. Reversed.

*Peters & Powell* and *Ballinger, Ronald, Battle & Tennant,* for appellant.

*Scott Calhoun,* for respondents.

PER CURIAM.—This action is brought by the appellant, who is a citizen and taxpayer of the city of Seattle, to enjoin a contemplated bond issue by that city. The respondent city challenged the sufficiency of the complaint by a general demurrer, which was sustained by the trial court. The appellant thereupon elected to stand on the complaint, and final judgment of dismissal was entered, from which this appeal is prosecuted.

From the complaint it is gathered that the city of Seattle is the owner of a water system from which the city and its inhabitants are supplied with water. This system has its source of supply in Cedar river, and is conducted from thence to the city by pipes through which the water flows by gravity to reservoirs within the city, from where it is distributed to the users thereof. The city, being desirous of enlarging this supply, proposed to lay additional pipes from the source of supply on Cedar river to the city, and construct new reservoirs, the same when completed to form a part of the existing sys-

tem. The bonds, to enjoin the issuance of which this action is brought, are proposed to be issued to defray the cost of this addition. The bonds are not made a general obligation of the city, but are made a charge upon a certain proportion of the income to be derived from the water system when completed, pursuant to subdivision (b) of § 2 of the act of the legislature of Washington, approved March 11, 1897, and the act amendatory thereof, approved March 8, 1905, (Laws 1897, page 326; 1905, page 300). The objections raised are two; namely: (1) that the act under which the proceedings were had is unconstitutional; and (2) that the proceedings had did not comply with the requirements of the statute.

It is objected to the act in question that it embraces more than one subject, and is thus in violation of § 19, of art. II, of the state constitution. This contention has its foundation in the fact that the act, as amended, authorizes cities and towns to acquire, regulate and conduct several distinct public utilities, between which there is no relation in the sense that one is dependent on the other; that is, the act empowers the city to acquire, maintain and operate water works, a sewerage system, plants for furnishing the city with light and power, cable and electric railways, and certain other enumerated public utilities. It is said that each one of these comprises a separate subject, and that legislative action on them should, to comply with the constitution, be by separate acts, since neither the title to the act nor the act itself indicates any general purpose or subject. But we cannot think this objection well founded. The purpose of the act, while in form independent, was to amend the general law relating to the powers of municipal incorporations; that is, it was intended to confer additional powers upon them. In this sense it embraced but one subject, and this is sufficient to relieve the act from the constitutional prohibition, since the purpose of the constitutional provision is to prevent log-rolling legislation—the insertion in one act of disconnected, unrelated subjects for the purpose of inviting

a combination of interests. While the question seems not to
have been before this court in its present form, it has been
before it in principle, and was determined contrary to the ob-
jection urged. *McMaster v. Advance Thresher Co.*, 10 Wash.
147, 38 Pac. 670; *Johnston v. Wood*, 19 Wash. 441, 53 Pac.
707; *Hathaway v. McDonald*, 27 Wash. 659, 68 Pac. 376;
*Seattle v. Barto*, 31 Wash. 141, 71 Pac. 735; *State v. Sharp-
less*, 31 Wash. 191, 71 Pac. 737, 96 Am. St. 893.

The second objection is of more moment. Section 2 of the
act in question provides that, whenever any city or town de-
sires to construct any of the public works described in the first
section of the act, it shall provide therefor by ordinance, which
ordinance shall specify and adopt the system or plan proposed,
and declare the estimated cost thereof, as near as may be, and
provide for submitting the same to the qualified voters of the
city or town for ratification or rejection at a special election
to be called for that purpose; further providing, that, if an
indebtedness is to be created by the construction of the pro-
posed public works, such indebtedness and the amount thereof
shall likewise be stated in the ordinance, and be likewise sub-
mitted to the qualified voters of the city or town for ratifica-
tion or rejection. Two forms of indebtedness are provided
for; the one, a general indebtedness of the city or town, which
the city or town stands obligated to pay; the other, an in-
debtedness against a special fund created out of a "fixed pro-
portion" of the income to be derived from the work authorized
when completed, which the city obligates itself to set aside for
that purpose, and into which it may, from time to time, by
ordinance, transfer any other of its available funds. Bonds or
warrants may be issued by the city against either of such funds
to the amount of the costs and charges to be met from such
fund. Such bonds, however, when issued against the special
fund, while declared a valid claim in favor of a holder thereof
against the special fund, are especially declared not to consti-
tute an indebtedness of the city or town issuing them.

In its attempt to comply with these provisions of the statute, the city of Seattle adopted an ordinance (No. 14,116), having the following title:

"An Ordinance, proposing to the voters of the city of Se-attle that the city of Seattle make certain additions to the existing water works owned and controlled by said city, specifying and adopting the proposed plans and details of said additions, and declaring the estimated cost thereof as near as may be, to be the sum of two million two hundred fifty thousand ($2,250,000) dollars, and providing for the holding of an election in the city of Seattle, on the 12th day of September, 1906, at which said voters may vote for or against said proposition; also providing for the construction of said additions to the water works in case a majority of the voters of said city voting at said election shall thereby assent to said proposition, and providing for the payment therefor and establishing a fund for such payment by setting aside therefor, during the period of construction of said addition, such an amount from the gross revenue derived from the water works owned and controlled by the said city as shall be necessary to pay interest on all bonds issued prior to the first day of January, 1909, and providing for the payment into said fund, from and after the first day of January, 1909, of the sum of one hundred and seventy-five thousand ($175,000) dollars per annum, out of seventy-five per cent of the gross revenues derived from the water works owned and controlled by said city (exclusive of revenue from water used for municipal purposes) for the annual payment of interest and the partial payment of the principal, until all of such bonds shall be re-deemed."

Section 2 of the body of the ordinance described the plan of the proposed improvement, its estimated cost, and the amounts for which it was proposed to issue bonds. Section 3, provided for the submission of the plan and mode of payment to the qualified voters of the city, and was in the following language:

"A special election shall be held on Wednesday the 12th day of September, A. D. 1906, in the city of Seattle, at which there shall be submitted to the qualified voters of the city of

Seattle, for ratification 'or rejection, the proposition of the construction of additions to the present Cedar River Water System of the city of Seattle by the acquisition of necessary additional lands or rights of way, the construction of an additional gravity supply main not less than fifty-four (54) inches in diameter, from the present intake of Cedar River to the City of Seattle, and the construction of two additional reservoirs and the connecting of the additional supply main with the present and proposed reservoirs and the connecting of said reservoirs with the present distribution system of the city of Seattle, in accordance with the plan or system set forth in section two of this ordinance, together with the proposition of incurring a special bonded indebtedness bearing interest at a rate not to exceed five per cent per annum in the sum of two million, two hundred and fifty thousand ($2,250,-000) dollars to be an obligation against not to exceed one hundred and seventy-five thousand ($175,000) dollars per annum, to be set aside from the gross revenue or proceeds to be derived from the water system of the city of Seattle."

Section 5, created the fund out of which payment was to be made, and reads as follows:

"That there be and hereby is created and established a fund to be called 'Cedar River Water Supply Fund, of Seattle, Series Number 2,' into which said fund shall be paid out of seventy-five per cent. of the gross revenues of the water system of the city of Seattle, an amount necessary to pay the interest on each interest bearing date on the bonds issued in compliance with section two (2) of this ordinance until the first day of January, 1909, after which date there shall be paid into such fund out of such receipts (exclusive of revenue from water used for municipal purposes), the sum of one hundred and seventy-five thousand ($175,000) dollars per annum, which sum shall be applied to the payment of interest and on account of the payment of the principal on said bonds until all of said bonds are redeemed."

The questions submitted to the qualified voters, as stated in the notice, were the following:

"Notice is hereby given that under the provisions of Ordinance No. 14,116 there is submitted to the qualified voters of the city of Seattle for their ratification or rejection, the propo-

sition of the construction of additions to the present Cedar River Water System of the city of Seattle, by the acquisition of an additional gravity supply main, not less than fifty-four (54) inches in diameter, from the present intake on Cedar River to the city of Seattle and the construction of two additional reservoirs and the connecting of the additional supply main with the present and proposed reservoirs and the connecting of the said reservoirs with the present distribution system of the city of Seattle, in accordance with the plan or system set forth in sections one and two of said Ordinance No. 14,116, together with the proposition of incurring a special bonded indebtedness, bearing interest at a rate not to exceed five per cent per annum, in the sum of two million two hundred and fifty thousand ($2,250,000) dollars, to be an obligation against not to exceed one hundred and seventy-five thousand ($175,000) dollars per annum to be set aside from the gross revenue or proceeds to be derived from the water system of the city of Seattle."

It is apparent, from a comparison of these several excerpts, that the scheme for creating the fund out of which the bonds were to be paid, as proposed by the ordinance, is not the scheme that was submitted to the voters of the city and by them ratified. The ordinance proposes a fund created by diverting from seventy-five per centum of the gross revenues derived from the existing system sufficient to pay the accruing interest on the bonds until January 1, 1909, and thereafter by diverting from seventy-five per cent of such gross revenues one hundred and seventy-five thousand dollars per annum, exclusive of revenues from water used for municipal purposes. On the other hand, the proposition submitted to the voters was to pay into the fund $175,000 out of the gross revenue of the system without any deductions whatsoever, either of a percentage of the gross revenues derived from the system, or of revenue derived from water used for municipal purposes. This, it seems to us, was not a compliance with the statute in this respect. Inasmuch as the city was required by the statute to submit to the qualified voters of the city the plan for raising revenues to meet the cost of the system, it must sub-

mit to them the entire plan, in the form it is proposed to put
it into effect, as authority to incur the obligation in the form
proposed is derived as much from the voter as it is from the
ordinances and other proceedings on the part of the city
officers.

Furthermore, neither of these plans followed the statute.
The requirement of the statute is that a "fixed proportion"
of the revenues derived from the system be set apart to meet
the accruing interest on the obligation, and the obligation it-
self as it matures.   Seventy-five per cent out of the gross
revenues of the system would, of course, be a fixed proportion
of such revenues, but $175,000 out of the gross revenues or
out of seventy-five per centum of the gross revenues, is not a
fixed proportion of such revenues, but is a varying proportion,
being less or more than a fixed proportion of the entire gross
revenue as these revenues increase and diminish.

What would be the effect of this departure from the statute
were the defendant an innocent purchaser of the bonds, or a
person who had paid the city value for them, need not be
here considered.   This suit was instituted to prevent the is-
suance of the bonds, and the defect is sufficiently glaring to
warrant the court in granting an injunction.   We have not
overlooked the argument that the voter is not injured if the
city grants less than the vote authorizes, but we think that
argument not sound.   The injury lies in the fact that such
defects and irregularities frighten away the prudent, cautious
person who is seeking a safe and permanent investment, and
who would be inclined to take the bonds on low rates—leaving
the field entirely to those of a speculative turn who are willing
to take increased risks for the sake of increased gains.   Both
the city and the voter are injured when the proceedings lead-
ing up to the issuance of the bonds are so defective as to give
rise to these conditions.

It was competent for the city to make an agreement with
the contemplated purchaser of the bonds as to the time of

payment, and it is no objection to their issuance that the bonds were not to be paid for until the money was actually needed by the city in the prosecution of the contemplated work. For the defect noted, however, the judgment appealed from is reversed, and the cause remanded with instructions to reinstate the case and overrule the demurrer.

Root, J., dissents.