[No. 7859.    Department One.    July 14, 1909.]

## T. A. HANSARD, *Appellant*, v. JOHN F. GREEN *et al.*, *Respondents.*[1]

MUNICIPAL CORPORATIONS—CONTRACTS—CREATING INDEBTEDNESS—ISSUANCE OF BONDS IN PAYMENT OF UNAUTHORIZED CONTRACT. Under Bal. Code, § 1077, requiring a town to sell bonds issued for the purpose of purchasing water works, as deemed for the best interests of the town, the town has no authority to issue bonds and deliver them to bankers who advanced the money to purchase the water works at the special instance and request of the town.

SAME—ACQUISITION OF WATER WORKS—SUBMISSION TO VOTE—ORDINANCE—REQUISITES. An ordinance submitting to a vote of the people a proposed acquisition of water works by a town, is insufficient in that it fails to submit the "system or plan" proposed, as required by statute, where it merely recites the advisability of the purchase and the issuance of bonds to pay for the same, without setting out the matters proper to be considered respecting the time the bonds are to run, rate of interest, etc., including a method for the payment of the bonds.

SAME—ACTIONS—PLEADING—INTERVENTION—PARTIES ENTITLED. In an action against a town to enjoin the issuance of bonds in payment of a contract made by the town without authority of law, in which the town defaults, the contractors cannot be allowed to intervene and obtain the benefit of performance of the contract.

[1]Reported in 103 Pac. 40.

Appeal from a judgment of the superior court for Lincoln
county, Warren, J., entered September 28, 1908, dismissing
an action to enjoin the issuance of municipal bonds, after a
trial before the court without a jury. Reversed.

*Merritt, Oswald & Merritt,* for appellant.

*Happy & Hindman* and *Martin & Grant,* for respondents.

CHADWICK, J.—Plaintiff brought this action as a tax-
payer, to enjoin the issuance of certain municipal bonds.
The town made no appearance, and an order of default was
entered. The defendants John F. Green, M. F. Adams, and
A. G. Mitchum are copartners doing business under the firm
name and style of the Bank of Harrington, at Harrington,
Washington, and were allowed to intervene, alleging them-
selves to be taxpayers and property owners within the town
of Harrington. The interveners alleged in their petition:

"That in the year 1907, at a special election held in the
said Town of Harrington, over three-fourths of the quali-
fied voters of said town voted to purchase a water system
and to issue bonds for the payment therefor, to supply said
town with water, and to pay therefor the said sum of twenty-
two thousand dollars ($22,000), and to issue bonds for said
sum; and that after said election was held and carried, at the
special instance and request of the said Town of Harrington,
the said owner of said water system, Olner Dobson, deeded
said water works to said town, and said town is now and ever
since has been in possession thereof, and collecting the reve-
nues therefrom; that at the time said system was conveyed
to the said town, these interveners, at the special instance and
request of the said Town and said Olner Dobson, paid to the
said Dobson the said sum of $22,000 in cash money, and the
said town, with the consent of the said Dobson and of the in-
terveners, promised and agreed to transfer and deliver the
said $22,000 of bonds when printed and executed, to these
interveners, in payment of the said sum of $22,000, so paid
over to the said Dobson by these interveners at the special
instance and request of the said Town of Harrington; and
the said bonds have not yet been delivered to these inter-
veners, as promised, but the said T. A. Hansard, plaintiff in

the above entitled action, is now seeking to enjoin the said town from executing and delivering the said bonds to these interveners."

The foregoing is a succinct statement of the ultimate facts upon which the interveners rely, and we do not deem it necessary to make further mention of, or reference to, their complaint in intervention. To the complaint in intervention a motion to strike was interposed, upon the grounds, *inter alia,*

"(2)   For the reason that said interveners have no right, title or interest in and to the subject-matter of this action, to wit:   the right of said town, or its officers, to issue and sell said bonds for the reason that said interveners could not have or acquire any interest in said bonds although said bonds could be issued until said bonds were sold as by law provided.

"(3)   For the reason that if the interveners have, or ever did have, the contract and arrangement as alleged in their complaint, whereby said bonds were to be turned over and delivered to them, such contract would be in contravention of law, the specific provisions of the statute of the state of Washington and against public policy."

This motion was overruled. After other proceedings, all of which occurred over the protest of plaintiff, the case proceeded to trial upon the complaint in intervention and denials of plaintiff; and, after hearing the evidence, the court ordered that plaintiff take nothing, and rendered judgment in favor of the interveners for their costs and disbursements.

A number of errors are assigned, but from the view of the case taken by us, it is unnecessary to discuss any of them other than those going to the full merit of the case.   Waiving the question whether a taxpayer may substitute himself as a defendant in an action against a municipality, which has been brought into court under a proper process and has defaulted by direction of the council, thus substituting his judgment for that of the council, and trying out an individual right, and coming to the main question, it would seem

that respondents cannot recover. We know of no rule of law which permits a municipal corporation to contract a debt upon an agreement to issue bonds to cover it. To so hold in this case would be equivalent to holding that the court had the right and power to say that the contract should be executed—the bonds sold to interveners—when the right is reserved to and the duty put upon the corporate authorities to sell them in such manner as they should deem for the best interests of the town (Bal. Code, § 1077), and thus by judicial decree usurp and exercise a legislative function. It is within the power of a city or town to purchase a water works system and to issue its bonds to raise money to pay therefor, but it cannot contract a bond issue in advance of its authorization, and deliver them, over the challenge of a taxpayer. The bond must be in existence before it can be delivered or become an object of barter and sale.

"As was said by this court, in *Clark v. The City of Des Moines*, 19 Iowa 199 (i. e. 213), 'this class of securities are made and issued for the express purpose of raising money by their sale.' They cannot accomplish the purpose of their execution and issue except by being sold; and they cannot be sold without establishing their market value. They are made for the market, are sold in the market, and hence must have and always do have a market value; and while it is true that this value may and often does change, it is, nevertheless, always susceptible of very direct and satisfactory proof." *Griffith v. Burden*, 35 Iowa 138.

To hold that a party advancing money at the request of the officers of a municipal corporation, upon their promise to reimburse the creditor by an issue of its negotiable bonds, can acquire a right of action would defeat both the purpose and spirit of the law.

There is another reason that would compel a reversal of this case in any event. The law provides that the system or plan proposed in the acquisition of a public improvement shall be submitted to the people for ratification or rejection. The ordinance before us goes no further than to recite the

advisability of purchasing the existing water works system, and that "said town become indebted and issue its bonds as provided by law in the sum of twenty-two thousand ($22,000) dollars, for the purchase of such water works." The plan or system is not set out. The time the bonds are to run, the rate of interest, the manner of payment, are all matters proper to be considered, and, without some mention thereof, the taxpayer cannot vote with that understanding contemplated by the statute. Payment is as much a part of the "plan or system" as is the purchase, and a method should be provided in the ordinance. Otherwise the voter has expressed his opinion upon a part only of the object sought to be attained.

From the authorities Mr. Simonton, in his work on Municipal Bonds, § 89, draws these conclusions:

"The title should state the object of the ordinance; then usually follows the introduction ordaining or enacting the ordinance, after which follows the scope and purpose of the ordinance. Hence when the object is to authorize the issue of bonds, the bonds should be directed to be issued, the purpose of the issue should be stated, the amount to be issued, the denomination of the bonds, when they shall bear date, time and place of payment, the rate of interest and place of payment thereof."

This we consider well within the reasoning of *Seymour v. Tacoma*, 6 Wash. 138, 32 Pac. 1077; *Buckley v. Tacoma*, 9 Wash. 253, 37 Pac. 441, and *Aylmore v. Seattle*, 48 Wash. 42, 92 Pac. 932. It will thus be seen that the interveners have sought to do indirectly what they could not have done directly; that is, put the stamp of legality upon a contract that could not have been enforced in a direct action. Having no standing in court to contest the right of appellant, and the town having defaulted, it follows that the motion for nonsuit was improperly entered.

The cause is reversed, and remanded with directions to enter a judgment of default in favor of the appellant and

against the town, and to dismiss the complaint in intervention.

RUDKIN, C. J., FULLERTON, GOSE, and MORRIS, JJ., concur.