[No. 12246. Department One. December 17, 1914.]

J. H. CARSTENS et al., Appellants, v. F. E. DeSELLEM et al., Respondents.[1]

STATUTES—TITLES AND SUBJECTS. Constitution, art. 2, § 19, providing that no bill shall embrace more than one subject, expressed in its title, is not violated by 3 Rem. & Bal. Code, § 3000-1 et seq., entitled an act creating a department of agriculture, providing for the organization and administration thereof, defining the powers and duties of its officers and employees in relation to agriculture, horticulture, live stock, dairying, state fairs, foods, drinks, drugs, oils, and other kindred subjects, etc., since the object is to create a department of agriculture and define its duties, and it is immaterial that duties are imposed that do not strictly apply to agriculture.

STATUTES—AMENDATORY ACTS—TITLES AND SUBJECTS. Const., art. 2, § 37, providing that no act shall be revised or amended by mere reference to its title and the act revised or the section amended shall be set forth at full length, does not apply to an act that does not purport to be amendatory, but is an independent act directly repealing certain enumerated sections.

CONSTITUTIONAL LAW—DUE PROCESS OF LAW—NOTICE—REASONABLENESS—RIGHT OF APPEAL TO COURTS. The horticultural act, requiring only five days' notice before inspectors may enter and cut down diseased orchard trees, is not in contravention of the due process clause of the constitution in that five days is an unreasonable time, nor in that no right of appeal is given from the decisions of the inspectors; in view of 3 Rem. & Bal. Code, § 3000-9, providing that any person aggrieved by any act of an inspector may appeal to the commissioners, who shall forthwith proceed to hear and determine such appeal and report his decision to appellant and the inspector, which decision shall not preclude an appeal or proper action in the courts in cases where such rights would otherwise exist.

CONSTITUTIONAL LAW—LEGISLATIVE POWERS—DELEGATION—ADMINISTRATIVE DUTIES—POLICE POWER. The horticultural law, Rem.

[1] Reported in 144 Pac. 934.

& Bal. Code, § 3069 *et seq.*, is not unconstitutional as vesting in the commissioner of agriculture legislative powers, in that, without enumerating any of the diseases and pests on account of which owners must destroy infected trees or disinfect the same in the manner required by the commissioner, the law provides in Id., § 3092, that the diseases and pests injurious to nursery stock, trees, etc., to be guarded against, treated, and disinfected as previously provided "shall include any and all such diseases and pests" as the commissioner shall "specify and describe" in the bulletins to be issued by him "as injurious," since the legislature does not delegate to the commissioner the power to make a law, but only delegates the power to determine some fact or state of things upon which the law becomes operative; the necessities of the case, arising from new diseases, as they occur, justifying the state, under the police power, in leaving matters purely administrative to administrative officers.

AGRICULTURE—HORTICULTURE—OFFICERS—CERTIFICATE OF APPOINTMENT—SUFFICIENCY. 3 Rem. & Bal. Code, § 3000-8, providing that the commissioner of agriculture shall designate the division of the department to which any assistant or inspector appointed by him shall be assigned, and that he may be assigned to more than one division, is substantially complied with where his commission was general, certifying that he is a duly appointed, qualified, and acting inspector of the department of agriculture of the state of Washington, and as such vested with full authority to enforce all statutes and regulations relating to the department.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered July 13, 1914, dismissing an action of trespass, on overruling a demurrer to new matter in the answer. Affirmed.

*McAulay & Meigs*, for appellants.

*Harold B. Gilbert* and *Sydney Livesey*, for respondents.

Gose, J.—This is an action for damages for cutting down and destroying certain pear trees, and for cutting, mutilating, and injuring other pear trees, upon premises belonging to the plaintiffs, in Yakima county. The defendants answered, admitting the plaintiffs' ownership of the trees and the soil upon which they grew, and admitting that they cut down and destroyed certain pear trees, and that they cut out certain portions of other pear trees. They allege affirmatively, by way of justification, that the defendant DeSellem,

at and before the dates mentioned in the complaint, was the duly appointed, qualified, and acting inspector of and for the department of agriculture for the state of Washington; that in July, 1913, the assistant commissioner of agriculture issued a bulletin declaring that pear blight is a disease and pest injurious to the horticultural interests of the state; that the pear trees in question at the time of the cutting were, and for a year prior thereto had been, affected with pear blight; that pear blight is a contagious disease affecting pear, apple, and other fruit trees; that many of the trees in plaintiffs' orchard were practically destroyed by such blight and others were more or less affected by it; that, on the 2d day of March, 1914, the defendant DeSellem as such inspector served a notice upon the plaintiffs, stating that their orchard upon certain lands described in the notice (the trees in question) was infected with pear blight which had been declared by the assistant commissioner of agriculture to be a disease injurious to the horticultural interests of the state, and requiring them "to pull or cut out all trees or parts of trees affected which cannot be properly disinfected, and destroy same by burning; to disinfect all diseased parts that can be properly disinfected." The notice required them to commence work within five days from the date of the notice and to complete it by March 17. It is further alleged that, at the time of serving the notice, the defendant DeSellem gave the plaintiffs a copy of the bulletin referred to in the notice; that the plaintiffs failed, neglected, and refused to do any of the things mentioned in the notice within the time therein stated or at all, and that the defendant DeSellem, in his official capacity, with the assistance of the other defendants, on the 23d day of March, 1914, entered upon the plaintiffs' premises and cut down the trees mentioned in plaintiffs' complaint. It is further alleged that each and every one of such pear trees was infected with pear blight to such an extent as to render it incapable of disinfection, and to such an extent that the infection could not be eradicated by any methods

known to the science of horticulture; and that the defendants cut branches and limbs from various other trees on plaintiffs' premises which were infected with such blight and burned the same; "that no tree was cut out and no branch from any tree was cut away save and except such as was necessary to preserve the health of the surrounding trees and save and except such limb or tree could not be saved by disinfection." A demurrer to the new matter pleaded in the answer was interposed by the plaintiffs and overruled. The plaintiffs electing to stand upon the demurrer and declining to plead further, a judgment was entered dismissing the action. Plaintiffs have appealed.

The first point argued is that the statute, Laws 1913, p. 196 *et seq.* (3 Rem. & Bal. Code, § 3000-1 *et seq.*), is unconstitutional in that it violates § 19, art. 2, of the constitution, which provides that no bill shall embrace more than one subject and that shall be expressed in the title. The title of the act is as follows:

"An act creating a department of agriculture, providing for the organization and administration thereof, defining the powers and duties of its officers and employees in relation to agriculture, horticulture, live stock, dairying, state fairs, foods, drinks, drugs, oils, and other kindred subjects, providing penalties for the violation thereof, and repealing certain acts and parts of acts."

The first section of the act provides that there shall be a department of the state government known as the department of agriculture, which shall be charged with the administration of the laws relating to agriculture, horticulture, and other defined industries. Section 2 provides that the office of commissioner of agriculture is hereby created. Other sections of the act define the powers and duties of the commissioner of agriculture. The purpose of the act is clearly single, viz., to create a department of agriculture and define its powers and duties. The fact that duties which do not strictly appertain to agriculture are imposed upon the de-

partment does not make the act double in its scope and purpose. *Aylmore v. Seattle*, 48 Wash. 42, 92 Pac. 932; *Seattle v. Barto*, 31 Wash. 141, 71 Pac. 735; *Marston v. Humes*, 3 Wash. 267, 28 Pac. 520; *State ex rel. Lindsey v. Derbyshire*, 79 Wash. 227, 140 Pac. 540; *State v. Asotin County*, 79 Wash. 634, 140 Pac. 914; *Maxwell v. Lancaster*, 81 Wash. 602, 143 Pac. 157.

In *Marston v. Humes*, it is said that:

". . . so long as the title embraces but one subject it is not inimical to such constitutional provision, even although the subject as thus used contains any number of sub-subjects."

It is further said that an act to provide a code of civil procedure would not be invalid although innumerable subsubjects could be carved out of it, and that "the legislature may adopt as comprehensive a title as it sees fit and, if such title when taken by itself relates to a unified subject or object, it is good, however much such unified subject is capable of division." In *State v. Asotin County*, we said:

"It is sufficient if it indicates to an inquiring mind the scope and purpose of the law. The title may be general and will include all matters incidental and germane thereto."

It is next argued that the act is violative of § 37 of art. 2 of the constitution, which provides:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

The act does not purport to be amendatory. It is an independent act, directly repealing certain enumerated sections. It is true that the act imposes certain duties upon the commissioner which by other statutes are imposed upon other officers. But we do not think this fact renders the act obnoxious to the provision of the constitution under review. *Spokane Grain & Fuel Co. v. Lyttaker*, 59 Wash. 76, 109 Pac. 316. That case limits the scope of *Copland v. Pirie*, 26

Wash. 481, 67 Pac. 227, 90 Am. St. 769, relied upon by the appellants. In the *Lyttaker* case, we said:

"The legislature may embody all legislation relating to a given subject in a single act, or it may cover the subject by a succession of acts. This is entirely a matter of legislative discretion over which we can assume no control."

In this case, Judge Rudkin collates and reviews the authorities at length. The case may be read with profit by those interested in the subject.

It is argued that the act is in contravention of the due process of law clause of the constitution, (a) because it does not adequately provide for a review of the decision of the inspector, and (b) because five days' notice was insufficient. The answer to the first objection is found in § 9 of the act. It provides that any person aggrieved by any order or act of any assistant or inspector in the department of agriculture may appeal from such findings, order, or act, to the commissioner, who shall forthwith proceed to hear and determine such appeal, render his decision thereon, and report the same to the appellant and to such assistant or inspector.

"Such decision shall specify the further proceedings to be had in the premises. Such decision shall not, however, preclude an appeal or proper action in the courts in cases where such rights would otherwise exist." Laws 1913, p. 199, § 9 (3 Rem. & Bal. Code, § 3000-9).

This section, by clear implication, holds the order of the subordinate officer in abeyance until the subject-matter of the appeal has been determined by the commissioner and reported to the officer who issued the order. In respect to the second proposition, it cannot be said that the time allowed for the commencement of the work was insufficient.

It is contended that the act violates § 1, art. 2, of the constitution, in that it purports to vest legislative power in the commissioner. The act relating to horticulture, Laws 1909, page 495 (Rem. & Bal. Code, § 3069), requires the commissioner of horticulture (§ 7, b; Id., § 3075) to enforce all

laws relating to horticulture and horticultural interests; (§ 12, c; Id., § 3080) to inspect orchards for the purpose of ascertaining whether the same are infected with any disease or pests injurious to fruit trees, and to take steps to disinfect the same and prevent the spread thereof; (§ 12, g; Id., § 3080) to disinfect, or cause to be disinfected, orchards, nursery stock, trees, fruit and other horticultural products and supplies, in case the owner or person having the same in charge, shall not do so after notice; and, in case of trees, fruits, etc., which cannot be properly disinfected, to destroy the same, or cause same to be destroyed; (§ 12, i; Id., § 3080) to prevent the introduction and spread of diseases of or pests injurious to fruit trees and horticultural plants, fruit and other products, and to prescribe and specify the means and methods to be employed for the disinfection of trees, fruit and horticultural products. Section 23 (Id., § 3091) of this act makes it the duty of the owner of premises on which fruit trees are growing, in event it is found that they are infected with any disease or pest to which the same may be subject, to "promptly take and use such methods as may be prescribed by law or by the state commissioner of horticulture to disinfect the same, and in event such nursery stock, fruit trees, shade trees, ornamental shrubbery and horticultural plants cannot be disinfected to promptly destroy the same." Section 24 of the act, Rem. & Bal. Code, § 3092, provides:

"The diseases of and pests injurious to nursery stock, fruit trees, shade trees, ornamental shrubbery and horticultural plants to be guarded against and treated and disinfected for as in the next preceding section provided shall include any and all such diseases or pests as the state commissioner of horticulture shall specify and describe in the bulletins to be issued by him as injurious to the fruit and horticultural interests of the state."

It will be seen that the act specifically provides that, if fruit trees are infected with "any disease or pest" to which

the same may be subject, it is made the duty of the owner, if they cannot be disinfected, "to promptly destroy" them.

It is alleged in the answer and admitted by the demurrer that the trees in question were, at the time of the serving of the notice and for a year prior thereto had been, infected with pear blight, a contagious disease, and that many of the trees were practically destroyed by such blight and others more or less affected by it. In the light of the act, we think the duties imposed upon the commissioner are administrative and not legislative.

In *Locke's Appeal*, 72 Pa. St. 491, 498, 13 Am. Rep. 716, it is said:

"The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend."

See to the same effect: *State ex rel. Oregon R. & Nav. Co. v. Railroad Commission*, 52 Wash. 17, 100 Pac. 179; *Health Department of New York v. Rector of Trinity Church*, 143 N. Y. 32, 39 N. E. 833, 45 Am. St. 579, 27 L. R. A. 710; *Hurst v. Warner*, 102 Mich. 238, 60 N. W. 440, 47 Am. St. 525, 26 L. R. A. 484; *Field v. Clark*, 143 U. S. 649.

It is true that the statute does not specifically enumerate the diseases or pests to be eradicated. It simply provides that, if the disease or pest exists and cannot be cured by disinfection, the owner shall promptly destroy the trees. It authorizes the commissioner to promulgate rules and regulations for eradicating diseases and pests, to the end that their spread may be prevented. In this respect the state is exercising its sovereign power commonly called its police power. Broadly stated, the police power of the state is the state's law of self-defense, in respect to both persons and property. *State v. Mountain Timber Co.*, 75 Wash. 581, 135 Pac. 645.

In that case, we said:

"Having in mind the sovereignty of the state, it would be folly to define the term. To define is to limit that which from the nature of things cannot be limited, but which is rather to be adjusted to conditions touching the common welfare, when covered by legislative enactments. The police power is to the public what the law of necessity is to the individual. It is comprehended in the maxim *salus populi suprema lex.* It is not a rule, it is an evolution."

The appellants have cited *Schaezlein v. Cabaniss,* 135 Cal. 466, 67 Pac. 755, 87 Am. St. 122, 56 L. R. A. 733, and *State ex rel. Adams v. Burdge,* 95 Wis. 390, 70 N. W. 347, 60 Am. St. 123, 37 L. R. A. 157. A reference to the former case will show that the law under review conferred upon the commissioner of labor certain arbitrary powers, and in effect delegated the law-making power to the commissioner and made his *ipse dixit* final and conclusive. In *State ex rel. Adams v. Burdge, supra,* the substance of the opinion is stated in the syllabus as follows:

"There is no statute in this state authorizing compulsory vaccination, nor any statute which requires vaccination as one of the conditions of the right or privilege of attending the public schools; and, in the absence of any such statute, a rule adopted by the state board of health . . . excluding from public and other schools all school children who do not present certificates of vaccination, cannot be sustained as a valid exercise of the police powers of that board."

Tested by the rule stated in *Locke's Appeal,* we think the law does no more than to delegate a power to the commissioner to determine some fact or state of things upon which the law becomes operative. It is impracticable, if not impossible, for the law-making power to foreknow and specifically enumerate all contagious diseases and pests that may arise affecting the horticultural industry of the state. To meet the necessities caused by new diseases as they may occur, and prevent their spread, matters purely administrative may be left to administrative officers. If this were not so, the lives and property of the people might frequently be placed

in jeopardy by the occurrence of some new contagion which the law-making branch of the government had not foreseen.

The last contention is that, because the certificate of appointment of the respondent DeSellem is general and fails to assign him any division, he was acting without authority in the premises. Section 8 (3 Rem. & Bal. Code, § 3000-8) of the act provides that the commissioner of agriculture shall designate the division of the department to which any assistant or inspector appointed by him shall be assigned, and that "an assistant or inspector may be assigned to more than one division." His certificate is as follows:

"This is to certify that F. E. DeSellem is a duly appointed, qualified and acting inspector of the department of agriculture of the state of Washington, and as such is vested with full authority to enforce all provisions of the statutes and regulations relating to the department of agriculture of the said state."

This certificate is regularly signed by the commissioner of agriculture. It will be seen that the act contemplates that an inspector may be assigned to more than one division. The commission of the respondent was general. We think it substantially complies with the statute.

The judgment is affirmed.

PARKER, MORRIS, MOUNT, and MAIN, JJ., concur.