**PUGET SOUND POWER & LIGHT CO. v. CITY OF SEATTLE et al.**

(District Court W. D. Washington, N. D. July 14, 1924.)

No. 404.

**Street railroads** ⚖️13—**Powers of city in contracting for purchase of street railroad held limited by enabling statute.**

Under power given by statute, defendant city contracted with complainant for the purchase of its street railway lines, and as required by the statute embodied the plan of purchase in an ordinance, which provided for issuance of utility bonds for a stated amount, to be paid from a sinking fund created out of the earnings of the property, which was to be conveyed by warranty deed free from liens. Before the conveyance was executed the property was assessed for taxes which became a lien thereon, and it was provided in the deed that such taxes should be paid

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by complainant, and defendant in amounts proportionate to the time each held possession of the property during the tax year. *Held*, that the power of the city in making the purchase was limited by the statute to the plan adopted, which did not provide for payment of the taxes by the city, but that the property should be conveyed free from liens; that whatever legal rights complainant might have against the city on the contract in the deed it could not impose a lien on the property, and that its payment of the tax, to avoid sale of its other property, did not entitle it to subrogation to the tax lien on the property conveyed.

In Equity. Suit by the Puget Sound Light & Power Company against the City of Seattle, the County of King, W. W. Shields, as Treasurer of King County, and Matt W. Starwich, as Sheriff of King County. On motion to dismiss amended and supplemental bill. Granted, with permission to transfer to law side.

See, also, 300 Fed. 441.

The complainant, a Massachusetts corporation, alleges corporate creation and official relation of the defendants and that on December 31, 1918, the council of the defendant city enacted Ordinances No. 39025 and No. 39062, respectively entitled:

"An ordinance relating to and specifying and adopting a plan or system of additions and betterments to, and extensions of, the existing municipal street railway system owned and operated by the city of Seattle, providing for the acquisition of and payment for certain street railway lines and street railway property and equipment, and issuing bonds in payment therefor, and providing for the creation of, and creating, a special fund to pay the principal and interest of such bonds."

"An ordinance relating to the municipal street railway system of the city of Seattle, providing for the acquisition of certain street railway lines, property and equipment as an addition and betterment thereto and extension thereof; and specifying the terms, and authorizing the making, of certain contracts in connection therewith."

Each of said ordinances took effect 30 days after January 2 and January 9, 1924, respectively. It is alleged Ordinance No. 39025 was enacted for the purpose of providing for the acquisition of and payment for street railway lines and equipment owned by the plaintiff in said city, and for the issuance of utility bonds of the city, payable out of a special fund created by such ordinance from the revenues of the municipal street railway system, and that Ordinance No. 39069 was to provide for the acquisition of such street railway lines and equipment and for the purpose of specifying the terms and authorizing the making of certain contracts in connection therewith, and that Ordinance No. 39069, prescribing the form of contract to be entered into by and between the plaintiff and the city, contained the following provisions: "No officer, agent or employé of the city of Seattle shall have power by agreement, acquiescence or estoppel, to in any way modify, waive, abrogate or alter said contract and agreement or any portion or part thereof."

And also: "Provided, that state, county, and municipal taxes levied against the property for the year 1919 shall be paid before the same shall become delinquent by the respective parties hereto in the amounts proportional to the respective periods of time that said parties are respectively in possession of said property during the year 1919."

And also: "In case this agreement or any provision thereof, or in case the ordinance providing for the making of this agreement or any provision thereof, or in case the ordinance providing for the issuance of the utility bonds to be issued in payment for the property or any provision of said ordinance, be declared invalid by the courts on appeal, then upon the happening of such event or events this agreement shall cease and terminate forthwith, unless said invalidity be corrected and validated by the passage of appropriate legislation at the 1919 session of the state Legislature or (in case it can be thus validated) by the passage of appropriate ordinances by the city council of Seattle, within sixty (60) days after such decision by the courts on appeal."

It further alleges that on February 10, 1919, the plaintiff company and the defendant city entered into the contract in the form prescribed by Ordinance No. 39069, and that Frank A. Twichell, a citizen and taxpayer of the defendant city, instituted in the state court an action against the city and the plaintiff to enjoin the consummation of such contract, challenging the validity of Ordinance No. 39069. A demurrer to the complaint being denied, appeal was prosecuted to the state Supreme Court, and "* * * the Supreme Court of the state held that each and all of the ordinances mentioned were valid; that the contract prescribed by Ordinance 39069 was valid and that the city had authority to consummate the purchase without the sanction of the qualified voters and that the power of the city had been exercised in the manner provided by law. * * *" The tax provision was not an issue.

On March 15, 1919, the state tax commissioner assessed the property described in the contract as personal property. On March 31, 1919, the trust companies then holding mortgages upon the property described delivered releases of the property, and the plaintiff conveyed the property to the defendant city in said contract described. The deed evidencing such transfer contained the following provisions: "It is also further agreed between the parties hereto that if at the time of the delivery of this deed any lien shall have attached to the property or any part thereof for the year 1919 for any tax for the year 1919, such lien shall not constitute a breach of warranty, and that if such tax shall become collectible the same shall be paid before the same shall become delinquent by the respective parties hereto in the amounts proportionate to the respective periods of time that said parties are respectively in possession of said property during the year 1919."

Thereafter taxes were levied upon said property for state, school, county and municipal purposes in amounts aggregating $401,017.76, and thereupon the plaintiff instituted in the state court an action against the county, its taxing officers and the defendant city to enjoin the collection of the taxes so levied, and the city joined with the plaintiff in its prayer to have the payment thereof enjoined, and in its prayer said: "That if any alleged tax upon the property * * * be held valid * * * that the Puget Sound Traction, Light & Power Company be charged with one-fourth thereof, and the city of Seattle be charged with three-fourths. * * *"

The King county tax collecting officials answered, asserting the validity of the tax lien. The state Supreme Court on appeal (117 Wash. 351, 201 Pac. 449, 207 Pac. 689), and the Supreme Court of the United States (44 Sup. Ct. 261, 68 L. Ed. ——), affirmed the decision of the nisi prius court dismissing the complaint, holding the tax valid. After the remittitur from the Supreme Court on April 28, 1924, the plaintiff sought to pay one-fourth of the taxes, which offer was renewed on the 29th of April, on the 30th of April, and on the 14th of May, and tendered to the said tax collecting officials the portion or part of the tax to be paid by the plaintiff company under the provisions of its contract, and also offered to pay in full the state tax, the school district tax, or the county tax; that such tender was declined, and thereupon the sheriff seized the property of the plaintiff other than that transferred to the defendant, and upon which taxes had been paid, and posted notice of sale and threatened to sell such property to satisfy the whole of such tax; that the defendant city has been in possession of all of said property since the conveyance thereof; that such seizure is unlawful, and that, unless restrained, the plaintiff will be irreparably damaged; and prayed that the defendants be restrained from interfering with any of the property of the plaintiff, and that the defendant city be required to specifically perform the contract with the plaintiff.

On June 5, 1924, by decision filed herein, the motion for restraining order was denied, and the motion of the defendants to dismiss was granted; the court saying the plaintiff has an adequate remedy at law, and the defendant tax collecting officers are state officers, collecting state taxes, and, if acting within state statutes, are within the meaning of the Eleventh amendment to the Constitution. Thereupon, upon motion of the plaintiff, leave was granted to file an amended and supplemental bill of complaint, in which it was alleged, among other things, that upon the payment of such tax by the plaintiff the

several amounts would be distributed to the various funds, and that the plaintiff will have no remedy against either the city, the county, or the school district for the recovery of such taxes or the interest thereon; that such payment will be claimed as the discharge of the street railway property from the lien on such taxes, and will deprive the plaintiff of the right to subject the street railway to the lien thereof; that the plaintiff is without remedy to recover from the county sheriff as collector of taxes; that the enforcement of such taxes against the property of the plaintiff is "unconscionable and inequitable," and the result of a fraudulent combination and confederation between the city of Seattle and the county of King, their officers and agents, to have such moneys collected in a lump sum and distributed to the various funds for which levied; and that the defendant city be enjoined from breaching the contract between the plaintiff and the defendant city, and that the defendant city be required to contribute three-fourths of the amount of such tax, with interest and costs; and prays that if such temporary injunction be still denied by the court, the plaintiff be allowed to pay such taxes with interest and costs in this suit, and that the plaintiff have a decree against the city requiring it to repay to the plaintiff forthwith three-fourths of the amount of such taxes, with interest and costs, and that the defendant be subrogated to the lien of such taxes upon the street railway property of the city of Seattle."

At bar it is stated that the tax has been paid by the plaintiff under protest. The defendants King county, tax collecting officers, and the city, severally move to dismiss for want of equity, multifariousness, and adequate legal remedy, want of necessary parties, etc. At bar I think the matter was submitted upon the issue of the right of subrogation.

James B. Howe, Hugh A. Tait, and E. L. Crider, all of Seattle, Wash., for plaintiff.

Malcolm Douglas, Pros. Atty., and Howard A. Hanson, Deputy Pros. Atty., both of Seattle, Wash., for defendants, except city of Seattle.

Thos. J. L. Kennedy, Corp. Counsel, and Geo. A. Meagher, Edwin C. Ewing, and Arthur R. Griffin, Assts. Corp. Counsel, all of Seattle, Wash., for defendant city of Seattle.

NETERER, District Judge (after stating the facts as above). The right of the parties is determined by what they did. The city can act only by ordinance. Section 18, art. 4, Charter; Hotel Cecil Co. v. Seattle, 104 Wash. 460, 177 Pac. 347. And the statute is the measure of its power. Uhler v. Olympia, 87 Wash. 1, 151 Pac. 117, 152 Pac. 998. Section 9488, Rem. C. S., empowers the city " * * * to purchase, * * * maintain [and] operate * * * electric and other railways, * * * " and when the purchase price of the utility is paid, not from the general fund, as here, the city council shall create a special fund for "the sole purpose of defraying the cost of such public utility, * * . * " into which special fund the city council may bind the city to set aside and pay a fixed proportion of the gross revenues of such public utility, and to issue and sell bonds payable at such times as the council shall determine, but such bonds and the interest thereon shall be payable only out of such fund. In creating the special fund the council shall have due regard to the cost of operation and maintenance, and to any proportion of the revenues previously pledged, and shall not set aside into such special fund a greater proportion of the revenue than in its judgment will be available over the cost of maintenance and operation and amounts previously pledged. Section 9491, Rem. C. S.

. When the city concludes to purchase the utility, the council shall provide therefor by ordinance, which shall *specify and adopt the system or plan proposed* (section 9489, supra), the wisdom of which is plain, for the electors have a veto power by referendum, so that the delegated power must be executed within the limit of authority pursuant to the adopted plan or system, as was stated by the Supreme Court in Hansard v. Greene, 54 Wash. 161, at page 165, 103 Pac. 40, 42 (24 L. R. A. [N. S.] 1273, 132 Am. St. Rep. 1107):

"The payment is as much a part of the 'plan or system' as the purchase and a method should be provided in the ordinance."

The city council, by Ordinance No. 39025, adopted a plan or system for the purchase of the railway for $15,000,000 in utility bonds, and therein created a special fund, to be called "Municipal Street Railway Bond Fund, 1919," and provided for the payment of part of the revenues of the municipal street railway system as a fund for the payment of the bonds, as in the ordinance provided, and on the same day passed Ordinance No. 39069 (contract ordinance), by which the railway system was purchased for $15,000,000 in utility bonds authorized by Ordinance No. 39025, in which ordinance is embodied the contract, which provides transfer by warranty deed free and clear from all liens and incumbrances, and the further provision that within 45 days from date, and prior to delivery of the bill of sale, releases from certain liens and judgments set out in the certificate will be furnished, and follows the further provisions:

"The parties hereby forever release and discharge each other from each and every claim, demand, and right of action of whatsoever kind and description arising and accruing from the beginning of the world to the date of this agreement, excepting those claims, rights, demands, obligations, actions and judgments herein expressly mentioned," and "taxes levied * * * for the year 1919 shall be paid before * * * delinquent by the respective parties hereto in amounts proportional to the respective periods of time that said parties are respectively in possession of said property during the year 1919."

The minds of the parties met on the date of the execution of the contract, February 10, 1919. The contract contemplated a transfer of the railway system free and clear of every incumbrance, no provision being made in the plan or system for the payment of any tax, nor was the transfer made subject to any taxes. The delay in the execution of the contract by exchange of bonds and transfer of title and possession was occasioned, no doubt, by the litigation in Twichell et al. v. Seattle, 106 Wash. 32, 179 Pac. 127. The taxes became a lien from the date of the assessment (section 11272, Rem. C. S.), which was March 15th, two weeks prior to the transfer and more than one month after the contract. The city agreed to pay a proportional part of the tax for 1919. If the transfer had been made two weeks prior, no taxes could have been assessed. The agreement with relation to the taxes for 1919 was a supplemental understanding to cover the emergency approaching, and was not within the plan or system provided by Ordinance No. 39025. The payment of the tax was not a part of the system or plan. This is also apparent from the argument of this

plaintiff in the Twichell Case, supra. The city council, in adopting the plan or system ordinance, performed a specially delegated function, and the power given by Ordinance No. 39069 is limited by the provisions of Ordinance No. 39025, supra, to the payment for the utility of $15,000,000.

Impressing the lien for $401,017.16 or any part in effect increases the purchase price by that amount, which the court may not do. The special fund is burdened with the cost, $15,000,000, maintenance and operating expense, interest charges, charges for betterments, improvements, etc. All funds provided were necessary for maintenance and interest (see Twichell v. Seattle, supra), and the limit of the provisions made at the time was known to the plaintiff and the plaintiff accepted the *agreement of the city to pay such proportion of the 1919 tax,* and may not now assert a claim against the *fund,* depletion of which would cause default in the payment of interest on the utility bonds, of which nearly $3,000,000 have been paid, and invite foreclosure, or sell the utility to pay the tax and deprive the public of its use.

The plaintiff must be relegated to its legal remedy against the city. The tax collecting officers were within their authority in collecting the tax. Decision, June 5, 1924. Good conscience does not seem to me, under the circumstances, to dictate subrogation, nor has the court power to so decree. If the plaintiff so elects, the cause may be transferred to the law side for further proceedings. The right of subrogation is denied.