[No. 14221. Department One. April 3, 1918.]

LILLIE LARSEN, *Respondent*, v. J. D. RICE, *Appellant*.[1]

MASTER AND SERVANT — REGULATION OF EMPLOYMENT — MINIMUM WAGE. Rem. Code, § 6571-1 *et seq.*, regulating the employment of women and fixing a minimum wage for certain classes of work is constitutional.

SAME — REGULATION — RECOVERY OF MINIMUM WAGE—"CLERICAL" WORK. The employment of a woman as a ticket seller in a moving picture house is "clerical" work, within the general clause of the order of the industrial welfare commission fixing a minimum wage pursuant to Rem. Code, § 6571-1 *et seq.*

COMPROMISE AND SETTLEMENT—LEGALITY—MINIMUM WAGE—MASTER AND SERVANT—REGULATION OF EMPLOYMENT. A compromise and settlement is no defense to an action by a woman to recover the legal minimum wage for her services under Rem. Code, § 6571-18; in view of the statute declaring contracts of employment for less than the minimum wage void, and making it a penal offense to pay less, and giving the employee a right of action to recover the difference; especially where the settlement was executory and had been repudiated, and the parties could be put in *statu quo* (PARKER, J., dissents).

Appeal from a judgment of the superior court for Lewis county, Reynolds, J., entered February 5, 1917, upon findings in favor of the plaintiff, in an action for wages, tried to the court. Affirmed.

*H. E. Donohoe* and *Forney & Ponder*, for appellant.
*Floyd M. Hancock (Gus L. Thacker*, of counsel), for respondent.

FULLERTON, J.—At its biennial session of 1913, the legislature of the state of Washington passed an act relating to the employment of women and minors. Laws 1913, p. 602 (Rem. Code, § 6571-1 *et seq.*). Section 2 of the act makes it unlawful to employ women or minors in any industry or occupation under condi-

[1]Reported in 171 Pac. 1037.

tions detrimental to their health or morals, or to employ women in any industry at wages which are not adequate for their maintenance. Section 3 (Id., § 6571-3) creates a commission to be known as the industrial welfare commission, and empowers it to establish conditions of labor such as shall not be detrimental to health and morals, and to fix reasonable standards of wages which shall be sufficient for the decent maintenance of women. Section 7 (Id., § 6571-7) provides that every employer of women and minors shall keep a record of the names of such persons employed and shall, on request, permit the commission or any of its duly authorized representatives to inspect such record. Sections 9, 10 and 11 (Id., §§ 6571-9, 6571-10, 6571-11) empower the commission, through the instrumentality of an advisory conference, to investigate the conditions of labor in any occupation, trade, or industry in which women and minors are employed, together with the wages paid such employees, and to establish by an obligatory order standard conditions for labor therein, and a minimum wage to be paid for such labor. Section 17 (Id., § 6571-17) declares it to be a misdemeanor for any person to employ a woman or minor for a less wage or under conditions prohibited by the order. Sections 17½, 18 and 19 read as follows:

"Sec. 17½. Any worker or the parent or guardian of any minor to whom this act applies may complain to the commission that the wages paid to the workers are less than the minimum rate and the commission shall investigate the same and proceed under this act in behalf of the worker." Rem. Code, § 6571-17½.

"Sec. 18. If any employee shall receive less than the legal minimum wage, except as hereinbefore provided in section 13, said employee shall be entitled to recover in a civil action the full amount of the legal minimum wage as herein provided for, together with costs and attorney's fees to be fixed by the court, notwithstand-

ing any agreement to work for such lesser wage. In such action, however, the employer shall be credited with any wages which have been paid upon account.'' Id., § 6571-18.

"Sec. 19. All questions of fact arising under this act shall be determined by the commission and there shall be no appeal from its decision upon said question of fact. Either employer or employee shall have the right of appeal to the superior court on questions of law.'' Id., § 6571-19.

Acting under and in pursuance of the statute, the industrial welfare commission appointed in pursuance thereof, after due investigation in the manner provided in the act, entered an obligatory order under the date of December 21, 1914, affecting office employment. The part of the order material here reads as follows:

"(1) No person, firm, association or corporation shall employ any female over the age of eighteen years as a stenographer, bookkeeper, typist, billing clerk, filing clerk, cashier, checker, invoicer, comptometer operator, or in any clerical work of any kind in any establishment whatsoever, in which a minimum wage rate applicable to such employee has not heretofore been established as provided by law, at a weekly wage rate of less than ten dollars ($10), any lesser wage rate being hereby declared inadequate as to such employees to supply the necessary cost of living and maintain them in health.

"(2) Not less than one hour shall be allowed for noonday luncheon to any female employee specified in paragraph (1) hereof, such requirement being demanded for the health of such employee.

"This order shall become effective sixty (60) days from the date hereof.''

Subsequent to the time the order became effective, the appellant in this action employed the respondent as a ticket seller in a moving picture house conducted by him at Chehalis. The respondent served in that capacity, as found by the trial court, for a period of

fifty-six weeks, working thirty-nine hours per week, being "absent at different times for a total of seven (7) days." The contract wage was three dollars per week, and this sum was paid her in full.

In July, 1916, the respondent began the present action to recover the difference between the wage rate paid and the sum she conceived herself entitled to under the statute and the obligatory order of the industrial welfare commission made in pursuance thereof. In her complaint she demanded judgment based on a flat rate of ten dollars per week for the number of weeks she was employed, but, at the trial, conceded through her counsel that she was entitled to recover only on the basis of ten dollars per week for a week of forty-eight hours. The trial court allowed a recovery on the latter basis, entering judgment in favor of the respondent for the sum of $278.87.

In his answer to the respondent's complaint, the appellant interposed general denials, and set up three affirmative defenses. The first of these affirmative defenses suggests the question whether the respondent's employment falls within, or is subject to, the obligatory order entered by the industrial welfare commission. In the second defense, a settlement of the controversy between the respondent and the appellant was set forth. The third raises the question of the constitutionality of the act. A demurrer was interposed to the several defenses, and overruled as to the first two, but sustained as to the last. At the trial the court determined from the evidence that the respondent's employment was within the obligatory order of the commission. It was held, however, that the facts set forth as constituting a settlement, although further amplified by a trial amendment, did not constitute a defense, and evidence offered to substantiate the plea was rejected.

In this court the appellant assigns error upon the several rulings of the trial court. These we will notice in turn, although not in the order in which they are presented in the brief.

The first question is the constitutionality of the act. On this question we do not feel disposed to enter into an extended discussion. The state of Oregon has a law upon its statute books almost the exact counterpart of our own, and its constitutionality was sustained by the unanimous decision of the highest court of that state sitting *En Banc,* against attacks based upon the several grounds urged by the appellants here. *Stettler v. O'Hara,* 69 Ore. 519, 139 Pac. 743; *Simpson v. O'Hara,* 70 Ore. 261, 141 Pac. 158. These cases were taken, by writ of error on the Federal question involved, to the United States supreme court, and were there affirmed after a reargument, although by an equally divided court, Mr. Justice Brandeis taking no part in the consideration and decision of the cases. *Stettler v. O'Hara* and *Simpson v. O'Hara,* 243 U. S. 629. The reasoning of the justice of the Oregon court writing the decisions in the cases appeals to us as sound and conclusive, and we are content to rest our judgment on the authority of the cases as there determined.

The second question, Is the work which the respondent was employed to perform within the obligatory order of the industrial welfare commission, was also, we think, correctly determined by the trial court. While the court found that the work was that of a cashier and thus fell within the enumerated employments set forth in the order, and while we think this conclusion may be questioned, we have no doubt that the work was clerical work and thus within the general clause of the order which follows the specially enumerated employments. This does not add to the list of employees a class not

considered by the conference appointed to investigate and make recommendations with reference to office help. The record shows that ticket selling in moving picture houses, along with a number of other employments of similar kind not specifically enumerated in the recommendation made, received the especial attention of the conference. The record shows, with reference to this particular class of employees, that they were then receiving an average wage of $8.34 per week of forty-eight hours, and that the conference members, by a unanimous vote, determined that this sum was insufficient, to use the language of the statute, "for their decent maintenance," and recommended a wage of ten dollars per week, which recommendation met with the approval of the commission.

The final question relates to the ruling of the court with reference to the defense of compromise. The offer of proof was reasonably within the allegations of the answer as amended at the trial. As it appears in the record, the offer was this:

"With the amended answer thus amended, defendant offers to prove by this witness, J. D. Rice, and by other witnesses that on or about the 22d day of June, 1916, and after all the services ever rendered by plaintiff for defendant at his moving picture show, included in the complaint, had been fully performed, and after plaintiff had been paid by defendant the amount she claimed for said services, and at a time when plaintiff was twenty-one years of age and in all respects competent to bind herself by contract and agreement, plaintiff made a further claim against defendant for her said services, claiming additional compensation in the sum of $274 and no more, and that, at said time, there was a dispute between plaintiff and defendant, the plaintiff claiming that she had performed services for five and one-half hours per day for a period of fifty-six weeks and defendant believing and claiming that plaintiff had only performed services for him for a period

of three and one-half hours each day for a period of fifty-six weeks, and that defendant also believing and contending that the Industrial Welfare Commission of Washington had not complied with the law in attempting to promulgate or establish a minimum wage rate affecting the employment of females over the age of eighteen years, and the order upon which this suit is based; and also believing and contending that plaintiff's said services so performed by her did not and do not entitle her to be classified as a cashier within the meaning of the law or within the meaning of said pretended order of the Industrial Welfare Commission, and does not entitle her to be classified in any manner under said pretended order so as to be entitled to the minimum wages therein specified, and that, in these circumstances, after a full and free discussion both pro and con of the respective claims of the plaintiff and of the defendant, and for the purpose of avoiding litigation, delay and uncertainty and preserving amicable feelings between the parties, plaintiff and defendant entered into a written contract whereby, in full satisfaction of all differences between them, it was mutually agreed that defendant should pay plaintiff the sum of $40 by check, which the defendant then and there did, and further, that defendant should employ plaintiff to sell tickets in his moving picture show window at Chehalis, Washington, between the hours of seven p. m. and ten p. m. of each day for a period of six months after the date of said agreement, at the rate of $5 per week, working during said hours only, which sum so paid by defendant to plaintiff and said contract so entered into was then and there mutually agreed to be in full satisfaction of all claims, if any, that plaintiff then had against the defendant for any services performed by her for him mentioned in the complaint herein, and particularly in satisfaction of her claim for the services sued upon in this action. That plaintiff, after signing said contract and after receiving a check for the $40, signed by defendant and payable to her order and drawn upon the bank of Coffman, Dobson & Co., Chehalis, Washington, and after retaining a copy of said written contract, actually entered upon the duties

of her employment under said contract of settlement and actually worked thereunder for a considerable length of time selling tickets for defendant as therein provided. That defendant has at all times been able, ready and willing to carry out, and has carried out, as far as he was permitted to do by plaintiff, his part of the contract, and that he is ready and willing to carry out the same and do all things therein provided to complete the fulfillment of said contract; that there was at the time said check was issued, has been at all times since and now is, ample funds to the credit of defendant in the bank on which said check was drawn to pay the same, and said check now certified by the cashier of said bank is tendered to plaintiff in open court, and that it has been stipulated that said tender may be considered as if made in cash at the time the first answer was served in this case.''

It is undoubtedly a general rule that private controversies between individuals *sui juris* may be compromised by them by mutual agreement, and that the courts will not, where no question of fraud intervenes, relieve from the agreement, even though it be shown that the one gained rights thereby to which he would not otherwise have been entitled and that the other gave up rights to which he was fully entitled; this, on the principle that compromises are favored by the law, since they tend to prevent strife and conduce to peace and to the general welfare of the community. But the controversy here had an added element not found in the ordinary controversy between individuals. It was not wholly of private concern. It was affected with a public interest. The state, having declared that a minimum wage of a certain amount is necessary to a decent maintenance of an employee engaged in the employment in which the respondent was engaged, has an interest in seeing that the fixed compensation is actually paid. The statute making the declaration not only makes contracts of employment for less than the min-

imum wage void, but has sought to secure its enforcement by making it a penal offense on the part of the employer to pay less than the minimum wage, and by giving to the employee a right of action to recover the difference between the wage actually paid and such minimum wage. The statute was not, therefore, intended solely for the benefit of the individual wage earner. It was believed that the welfare of the public requires that wage earners receive a wage sufficient for their decent maintenance. The statute being thus protective of the public as well as of the wage earner, it must follow that any contract of settlement of a controversy arising out of a failure to pay the fixed minimum wage in which the state did not participate is voidable, if not void. Especially must this be so, as here, where the contract of settlement is executory, has been repudiated by one of the parties, the parties can be placed *in statu quo,* and the wage earner, by carrying out the contract, will not receive the wage to which she is justly entitled. One has but to glance at the terms of the proposed settlement in this instance to see that the respondent will not receive thereby any just equivalent for the sum which she agreed to surrender. Our opinion is that it is not such a contract as the courts are required to enforce, and that it would be against the policy of the statute so to do.

These conclusions require an affirmance of the judgment, and it is so ordered.

ELLIS, C. J., MAIN, and WEBSTER, JJ., concur.

PARKER, J. (dissenting)—I think the compromise was permissible and that appellant should have been allowed to prove it as offered by him.