[Nos. 16150, 16164.  *En Banc.*  December 11, 1920.]

Spokane Hotel Company, *Appellant,* v. C. H. Younger *et al., Respondents.*

Hotel Company of Tacoma, *Appellant,* v. C. H. Younger *et al., Respondents.*[1]

Constitutional Law (134, 137) — Due Process — Regulating Minimum Wage—Notice. Rem. Code, § 6571-1 *et seq.*, authorizing the Industrial Welfare Commission to fix the minimum wage for women, without giving notice to employers with opportunity to be heard, is within the police power and is not unconstitutional as depriving a person of life, liberty or property without due process of law.

Same (32)—Legislative Power—Delegation to Local Authorities. The legislature may delegate to the Industrial Welfare Commission the power to determine the facts upon which the minimum wage law for women will become effective.

Master and Servant (13-1)—Service—Statutory Regulation—Minimum Wage. Under Rem. Code, § 6571-1 *et seq.*, giving authority to the Industrial Welfare Commission to specify the minimum wage and standard conditions of labor for women, the commission may make a weekly wage rate at six days.

Same (13-1). An order of the Industrial Welfare Commission fixing the minimum wage for women is not objectionable because it fixes the amount to be deducted for rooms and board, where it was left optional with the employer to furnish room and board at the prices stated.

Appeal from a judgment of the superior court for Thurston county, Wilson, J., entered August 16, 1920, in favor of the defendants, dismissing an action for injunction, after a trial to the court.  Affirmed.

*Thos. D. Rockwell* and *Hayden, Langhorne & Metzger,* for appellants.

*The Attorney General,* for respondents.

Mount, J.—This appeal is from an order of the lower court dismissing an action brought by the appellants

[1] Reported in 194 Pac. 595.

to restrain the industrial welfare commission from enforcing the following order:

"To Whom It May Concern:

"Take Notice:—That pursuant to the authority in it vested by chapter 174 of the session laws of the state of Washington, for 1913, [Rem. Code, §§ 6571-1, et seq.] and pursuant to the recommendations of the Public Housekeeping conference of representatives of employers and employes in the different occupations in the Public Housekeeping Industry throughout the state, together with the representatives of the public, duly held after investigation of such industry, which said recommendations were duly approved by said Industrial Welfare Commission.

"The term Public Housekeeping shall include the work of: cooks, housekeepers, linen room girls, chambermaids, cleaners, kitchen girls, dishwashers, pantry girls, pantry servers, waitresses, counter girls, bus girls, bell hops, checkers, cashiers, elevator operators, janitresses, laundry workers (where a laundry is not maintained in the establishment), and any other occupation which would properly be classified under Public Housekeeping. The establishments shall include: hotels, rooming houses, boarding houses, restaurants, cafes, cafeterias, lunch rooms, tea rooms, apartment houses, cook houses in camps, hospitals (not nurses), philanthropic institutions, and any other which may be properly classfied under this industry.

"The Industrial Welfare Commission for the State of Washington does hereby Order:

" (1)   That no person, firm, association, or corporation shall employ any female over the age of eighteen years in any occupation in the Public Housekeeping industry throughout the state, at a weekly wage rate of less than eighteen dollars ($18.00) or $3.00 per day or 37½c per hour, such wage being the estimate of said conference of the minimum wage adequate to supply the necessary cost of living and to maintain them in health and comfort.

" (2)   That no person, firm, association or corporation shall employ any female over the age of eighteen

years in any occupation in the Public Housekeeping Industry throughout the state more than six days in any one week.

"(3) That no person, firm, association or corporation shall employ any female over the age of eighteen years in any occupation in the Public Housekeeping Industry throughout the state more than five hours without a rest period of at least one-half hour; that a schedule of hours be posted in all cases.

"(4) That where a uniform be required it must be furnished and laundered by the employer.

"(5) That when meals are furnished to employes the time used in eating may be deducted in arranging the schedule; That if the room be furnished same must be properly heated and sanitary.

"(6) That there must be separate toilets for women and a suitable room provided for change of clothing and for eating lunches.

"(7) That women shall not be employed as 'bell hops' nor serve as elevator operators after 12:00 at night.

"(8) That when board is furnished $1.00 per day may be deducted; and for room furnished $2.00 per week may be deducted; that 25c may be deducted for breakfast, 35c for lunch and 40c for dinner; that in every case there shall be a definite agreement as to whether board and room shall or shall not be furnished; that otherwise the straight wage schedule shall prevail.

"(9) This Order shall become effective sixty (60) days from the date hereof, or June 2, 1920, and supersedes all other Orders heretofore issued covering this Industry."

The complaint alleges, in substance, that the plaintiffs were operating large hotels and employing a number of women therein as chambermaids, lien room workers, laundry workers and cleaners, none of whom were paid less than $13.20 per week, the minimum wage prior to June 20, 1920; that the order above quoted, made on June 20, 1920, was made without

authority; that no public hearings were had and plaintiffs had no notice or opportunity to be heard in regard thereto; that the minimum wage of $18 per week of six days is arbitrary, unreasonable and confiscatory to plaintiffs' property. The prayer is for an order enjoining the industrial welfare commission from enforcing the order.

On issues joined, the case was tried to the court and resulted in a dismissal. This appeal followed.

The appellants argue that the statute under which the industrial welfare commission acted is unconstitutional, (1) because it violates § 3, art. 1, of the constitution of this state and art. 1 of the fourteenth amendment of the constitution of the United States; (2) because public hearings were not held by the commission; (3) because the commission was without authority to fix a weekly wage of six days or to fix a rate for room and board. We shall consider these points in the order stated.

(I) The appellants argue that this statute is void because it violates the constitutional provision that "no person shall be deprived of life, liberty or property without due process of law." In *Larsen v. Rice,* 100 Wash. 642, 171 Pac. 1037, the constitutionality of this act was attacked. The provisions of the act are there summarized and need not be repeated here. It was there held that the act was a valid act. That decision was based upon *Stettler v. O'Hara,* 69 Ore. 519, 139 Pac. 743, Ann. Cas. 1916A 217, L. R. A. 1917 C 944, and *Simpson v. O'Hara,* 70 Ore. 261, 141 Pac. 158, 243 U. S. 629. The appellants here apparently concede that the subject of the act is within the police power of the legislature as a measure to insure the public health, welfare and safety, and do not attack the act upon that ground, but insist that the act makes

no provision for notice to persons affected by the act and for that reason is void. It is insisted that this question was neither presented nor considered in the case of *Larsen v. Rice, supra;* that the Oregon statute makes provision for notice and a hearing, while our statute makes no provision for notice to persons affected by the order. Counsel for appellants cite a large number of cases from the supreme court of the United States and other courts to the effect that, where individual rights or property is taken, there must be notice and an opportunity to be heard. Most of these cases, if not all of them, are cases affecting the rates to be charged by common carriers and are *judicial* in their nature. These cases are readily distinguishable from the case before us, because the duties of the industrial welfare commission, as fixed by the act under consideration, are administrative and not judicial. In the case of *G. O. Miller Telephone Co. v. Minimum Wage Commission,* 145 Minn. 262, 177 N. W. 341, which is a case very similar to the one before us, the supreme court of Minnesota said:

"The Minimum Wage Commission is an administrative body. It does not determine hours of labor or prescribe conditions of employment or work out the rights of employer or employe except in so far as its fixing of a minimum wage under conditions prescribed by the statute has such effect. Legislative power is not delegated to it nor judicial power conferred upon it. It has the administrative authority which is conferred by the statute. In performing the duties with which it is charged, it must be permitted to proceed in a practical way so as to accomplish the lawful results intended. It must be permitted to exercise judgment and discretion in working out the details of administration and establish some sort of administrative regulations. This does not mean that it has either delegated legislative or judicial power. The Legislature determines the policy of the statute. The review by a court of the

orders of the commission is limited to such as are made without jurisdiction, or under a mistaken interpretation of the law, or are so arbitrary and unreasonable that they deprive a party of guaranteed property rights.''

In the case of *Williams v. Evans,* 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L. R. A. 1918 F 542, that court said:

''The Legislature may, however, delegate to a commission the power to do some things which it might properly, but cannot advantageously, do itself. *State v. C. M. & St. P. Ry Co.,* 38 Minn. 281, 299, 37 N. W. 782; *Wayman v. Southard,* 110 Wheat. 1, 42, 6 L. ed. 253. It may vest in a commission authority or discretion to be exercised in the execution of the law. *State v. C. M. & St. P. Ry Co., supra; State v. Wagener,* 77 Minn. 483, 80 N. W. 633, 778, 1134, 46 L. R. A. 442, 77 Am. St. 681; *State v. Great Northern Ry Co.,* 100 Minn. 445, 111 N. W. 289, 10 L. R. A. (N. S.) 250; *Borgnis v. Falk Co.,* 147 Wis. 327, 358, 133 N. W. 209, 37 L. R. A. (N. S.) 489. It may delegate power to determine some fact or state of things upon which the law makes its own action or operation depend, (Locke's Appeal, 72 Pa. St. 491, 13 Am. Rep. 716; *Union Bridge Co. v. U. S.,* 204 U. S. 364, 383, 27 Sup. Ct. 367, 51 L. ed. 523), and may declare its law shall be operative or applicable only upon the subsequent establishment of some fact, *Milwaukee St. P. & S. S. M. Ry. Co. v. Railroad Commission,* 136 Wis. 146, 116 N. W. 905, 17 L. R. A. (N. S.) 821; *Cargo of Brig Aurora v. U. S.,* 7 Cranch, 382, 3 L. ed., 378.''

In *Carstens v. DeSellem,* 82 Wash. 643, 144 Pac. 934, this court said, in quoting from *Locke's Appeal, supra:*

''The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.''

To the same effect see: *State ex rel. Oregon R. & Nav. Co. v. Railroad Commission,* 52 Wash. 17, 100

Pac. 179; *New York Health Department v. Rector etc., of Trinity Church,* 145 N. Y. 32, 39 N. E. 833, 45 Am. St. 579, 27 L. R. A. 710; *Hurst v. Warner,* 102 Mich. 238, 60 N. W. 440, 47 Am. St. 525, 26 L. R. A. 484; *Field v. Clark,* 143 U. S. 649. See, also, *State v. Storey,* 51 Wash. 630, 99 Pac. 878.

The act in question, by §§ 6, 9, 10 and 11, authorizes the industrial welfare commission to ascertain the facts and, based thereon, to specify the minimum wage and conditions of labor for women and minors, and thereupon by writing notify the employers of such labor. In short, the legislature, instead of fixing the minimum wage and the conditions of labor for women and minors as it would clearly have the right to without any notice whatever to persons affected thereby, has authorized a commission to examine into and determine the facts upon which the act may become operative. This, we are satisfied, may be done without any notice unless notice is required by the act governing the commission. If the legislature may pass a law fixing a minimum wage and labor conditions for women and minors, it follows, as a matter of course, that the legislature may authorize the commission to determine the facts upon which such law may become operative. If personal notice must be given to employers before a minimum wage and working conditions for women or minors may be established by the legislature or by a commission appointed for that purpose, then such law could not be made, because it would be almost if not utterly impossible to notify every employer of such labor within the state. We are of the opinion that employers have no vested right to employ women or minors, and therefore are not entitled to notice as a matter of right. The legislature, in the exercise of its police power, may take away whatever rights the

employer has in that respect. It was said in *Chicago etc. Railroad Co. v. Nebraska*, 170 U. S. 57, at p. 77, quoting from a New York case, as follows:

"The legislature has power and has exercised it in countless instances to enact general laws upon the subject of the public health or safety without providing that the parties who are to be affected by those laws shall first be heard before they shall take effect in a particular case. . . . The fact that the legislature has chosen to delegate a certain portion of its power to the board of health, . . . would not alter the principle, nor would it be necessary to provide that the board should give notice and afford a hearing to the owner before it made such order. . . . Laws and regulations of a police nature, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbance. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner. If he suffer injury, it is either *damnum absque injuria,* or, in the theory of the law, he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure."

We are satisfied, therefore, that the act does not infringe upon either of the constitutional provisions above mentioned.

(II) It is next argued that public hearings were not had as required by § 9 of the act. It is sufficient to say upon this question that the record shows that at least three public hearings were had before the order of the industrial welfare commission was made. One of these hearings was a conference attended by three representatives of hotels, by three employees, and by three representing the public. Counsel who now represent appellants were present at all of these hearings. It is true the commission made independent inquiries

through letters in the form of questionnaires, which the commission clearly had a right to do.

(III)    Appellants argue that the commission exceeded its authority by fixing a weekly wage rate at six days. The statute, at section 11, provides that the commission shall specify the minimum wage and standard conditions for labor for women. This is clearly broad enough to justify the commission in fixing six days a week as a standard condition.

Appellants finally argue that the commission was without authority to say what amount should be deducted for room and board. We think that question is not in this case, because it does not appear that appellants are interested in it. But, assuming they are interested in it, that paragraph of the order numbered 8 leaves the matter wholly discretionary to the parties. The employer may or may not, as he chooses, furnish room and board at the prices stated. If he does not so agree, the straight wage schedule shall prevail.

We find no error in the record. The judgment of the lower court is therefore affirmed.

ALL CONCUR.