## Pratt v. Hollenbeck

304

*Lloyd Kennedy,* for plaintiffs.
*Brooks, Curtze & Silin,* for defendant.

KITTS, P. J., April 22, 1943.—Plaintiffs brought an action in assumpsit to recover the sum of $50 for each time that defendant demanded and received from plaintiffs rent in excess of the legal maximum permitted for housing accommodations in Erie, Pa. Plaintiffs in their statement of claim allege that on 17 different occasions defendant demanded and received rental for housing accommodations in excess of that permitted by maximum rent regulation no. 28 covering the Erie defense rental area, and seek to recover the sum of $850. Defendant has filed an affidavit of defense raising questions of law in which he makes the following contentions:

1. The maximum rent regulation upon which the action is based is invalid.

2. Said maximum rent regulation is unconstitutional because it was promulgated without findings of fact or hearings by the administrator and without any standards being established by Congress to guide the administrator.

3. The Emergency Price Control Act of 1942 is an invalid delegation of powers.

4. The Emergency Price Control Act of 1942 does not authorize a separate action for $50 for each separate payment of rent in excess of the legal maximum.

5. If the act does permit such actions, it violates the Eighth Amendment to the Constitution in that it provides for an excessive and unusual punishment.

At the outset we would like to say that we approach this problem with the same attitude as the court in the case of Henderson v. Detweiler (U. S. D. C., Neb., Oct. 27, 1942), when the court said:

"In ordinary circumstances the court would have no doubt at all but that the legislation and the regulations here involved would be utterly unconstitutional, and the government of the United States appearing in court in ordinary circumstances and in ordinary times and seeking to intrude into the right of private contract in a matter of this character would be given short shrift and would have no very patient hearing by this court.

"But these are not either ordinary times and Hall county, Nebraska, is no longer an ordinary place. The time is war; the place is a defense area. Now, those two terms have a very definite significance in the case, touching the question of constitutionality as that question applies both to the act itself and to the regulations under the act."

The Emergency Price Control Act of January 30, 1942, 56 Stat. at L. 23, is a statute born of the exigencies of war. Its constitutional basis is found in article I, section 8, of the Constitution, which in part reads as follows:

"The Congress shall have Power To lay and collect Taxes, . . . to pay the Debts and provide for the common Defence and general Welfare of the United States; . . . .

"To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water;

"To raise and support Armies . . .

"To provide and maintain a Navy;

"To make Rules for the Government and Regulation of the land and naval Forces;

"To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions; . . .

"To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers . . ."

In United States v. Macintosh, 283 U. S. 605 (1931), on the war powers of Congress, the Supreme Court said (p. 622):

"From its very nature, the war power, when necessity calls for its exercise, tolerates no qualifications or limitations, unless found in the Constitution or in applicable principles of international law. In the words of John Quincy Adams,—'This power is tremendous; it is strictly constitutional; but it breaks down every barrier so anxiously erected for the protection of liberty, property and of life.' To the end that war may not result in defeat, freedom of speech may, by act of Congress, be curtailed or denied so that the morale of the people and the spirit of the army may not be broken by seditious utterances; freedom of the press curtailed to preserve our military plans and movements from the knowledge of the enemy; deserters and spies put to death without indictment or trial by jury; ships and supplies requisitioned; property of alien enemies, theretofore under the protection of the Constitution, seized without process and converted to the public use without compensation and without due process of law in the ordinary sense of that term; *prices of food and other necessities of life fixed or regulated;* railways taken over and operated by the government; and other drastic powers, wholly inadmissible in time of peace, exercised to meet the emergencies of war." (Italics supplied.)

In peacetime Congress would not have the power to enact the statute here under discussion, for in that event local courts have exclusive jurisdiction of such issues. But these are not peacetimes. We are engaged in a war of survival. Our first duty is to win the war that the Nation may not perish. To this end the founders of the Republic in their wisdom, by constitutional provision, repeatedly construed by the Supreme Court in a long unbroken line of decisions, granted to Congress sweeping powers in legislative matters in times of National peril — war: Veechio v. Kelly (Circuit Court, Wayne County, Mich., Sept. 19, 1942).

That rent control is necessary to the effective prosecution of the war effort is not open to doubt. It is necessary in order to prevent the disastrous effects of inflation, to protect the families of men in the armed service, to attract workers to vital defense areas, to bring about a fair distribution of essential labor among the several defense areas, and to assure defense workers of housing accommodations at rentals that are not exorbitant. In short it is necessary to maintain civilian morale and insure the production of necessary armaments. It must follow that Congress has the power to regulate the costs of commodities and facilities in order to insure the essential armaments, prevent defeat, and insure the victory.

We are satisfied that the court does not have jurisdiction or power to consider the validity of maximum rent regulations promulgated under the provisions of the Emergency Price Control Act of January 30, 1942, 56 Stat at L. 23. Section 204 (c) of the act provides as follows:

"There is hereby created a court of the United States to be known as the Emergency Court of Appeals, which shall consist of three or more judges to be designated by the Chief Justice of the United States from judges of the United States district courts and circuit courts of appeals. The Chief Justice of the United States

shall designate one of such judges as chief judge of the Emergency Court of Appeals, and may, from time to time, designate additional judges for such court and revoke previous designations. The chief judge may, from time to time, divide the court into divisions of three or more members, and any such division may render judgment as the judgment of the court. The court shall have the powers of a district court with respect to the jurisdiction conferred on it by this Act; except that the court shall not have power to issue any temporary restraining order or interlocutory decree staying or restraining, in whole or in part, the effectiveness of any regulation or order issued under section 2 or any price schedule effective in accordance with the provisions of section 206. The court shall exercise its powers and prescribe rules governing its procedure in such manner as to expedite the determination of cases of which it has jurisdiction under this Act. The court may fix and establish a table of costs and fees to be approved by the Supreme Court of the United States, but the costs and fees so fixed shall not exceed with respect to any item the costs and fees charged in the Supreme Court of the United States. The court shall have a seal, hold sessions at such places as it may specify, and appoint a clerk and such other employees as it deems necessary or proper."

Section 204 (*d*) of the act provides:

"Within thirty days after entry of a judgment or order, interlocutory or final, by the Emergency Court of Appeals, a petition for a writ of certiorari may be filed in the Supreme Court of the United States, and thereupon the judgment or order shall be subject to review by the Supreme Court in the same manner as a judgment of a circuit court of appeals as provided in section 240 of the Judicial Code, as amended. The Supreme Court shall advance on the docket and expedite the disposition of all causes filed therein pursuant to this subsection. The Emergency Court of Appeals, and

the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

In Henderson v. Burd (C. C. A. 2d, Feb. 9, 1943), an attack was made on the validity of a regulation of the Office of Price Administration and Circuit Judge Swan said:

"The contention . . . is an attack upon the validity of the regulations, of which the emergency court of appeals established by section 204, 55 U. S. C. §924, has exclusive jurisdiction."

The United States District Court for Minnesota in United States v. C. Thomas Stores, Inc., et al., 49 Fed. Supp. 111 (Feb. 26, 1943), passed on this point, saying (p. 115):

"Congress has established a plan for administrative and judicial review. After the exhaustion of administrative remedies, the judicial review is vested in the Emergency Court of Appeals, Section 204(c) . . . In so far as judicial review is concerned, however, the only court that has any authority as to the validity of any regulation or price maximum is the court specially constituted for that purpose."

The denial of jurisdiction to State courts to consider the validity of such regulations is not an attempt by Congress to preserve such regulations from judicial scrutiny. It is an essential part of the procedural system set up by the act, which is intended on the one hand to insure fair and expeditious review of such regulations, and on the other to guarantee consistent and uninterrupted operation of price and rent control in the battle against inflation.

There can be no question of the validity of the denial of jurisdiction to State courts to consider the validity of such regulations. Cases concerning the validity of such regulations are cases arising under the laws of the United States and are therefore within the judicial power of the United States: Cohens v. Virginia, 6 Wheat. 264; Osborn et al. v. Bank of the United States, 9 Wheat. 738; Tennessee v. Davis, 100 U. S. 257; Smith v. Kansas City Title & Trust Co. et al., 255 U. S. 180. Congress has unlimited power to withhold from State courts jurisdiction over matters within the judicial power of the United States: Martin v. Hunter's Lessee, 1 Wheat. 304; The Moses Taylor, 4 Wall. 411; Claflin v. Houseman, 93 U. S. 130; Kalb et ux. v. Feuerstein et ux., 308 U. S. 433; Venner v. New York Central & Hudson River R. R. Co. et al., 164 N. Y. Supp. 626, affirmed in 226 N. Y. 583, certiorari denied in 249 U. S. 617.

The leading case holding that State courts have no jurisdiction to consider the validity of maximum rent regulations is Kittrell v. Hatter, 10 So.(2d) 827 (1942), decided by the Supreme Court of Alabama. We quote from that decision (p. 831):

"The constitutionality of Section 204 (d) rests squarely upon these well established constitutional principles:

"1. A case in which the validity of a federal statute or regulation is called into question is a case or controversy arising under the Constitution or laws of the United States.

"2. Under Article III of the Federal Constitution, the judicial power of the United States extends to all cases or controversies arising under the Constitution or laws thereof.

"3. Congress may withhold from state courts jurisdiction over any matter within the judicial power of the United States. Cohens v. Commonwealth of Virginia, 6 Wheat. (19 U. S.) 264, 5 L. Ed. 191; Osborn v. Bank of United States, 9 Wheat. (22 U. S.) 738, 6 L. Ed. 204; State of Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; Smith v. Kansas City Title & Trust Co., 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577; Martin v. Hunter's Lessee, 1 Wheat. (14 U. S.) 304, 4 L. Ed. 97; The Moses Taylor, 4 Wall. (71 U. S.) 411, 18 L. Ed. 397; Claflin v. Houseman, 93 U. S. 130, 23 L. Ed. 833; Kalb v. Feuerstein, 308 U. S. 433, 60 S. Ct. 343, 84 L. Ed. 370; Forsyth v. Central Foundry Co., 240 Ala. 277, 198 So. 706.

"These principles furnish the basis for removal of causes presenting a federal question; that is to say, when the correct decision depends on the correct construction of the Constitution or law of the United States. 54 C. J. 231, §48.

"A bill challenging the validity of an Act of Congress upon the ground that it is in violation of the Constitution in that it denies to complainant the protection of property rights guaranteed by the Constitution turns upon the construction of the Constitution and the Act of Congress. Certainly, such action would be removable but for the provision of the Act in question denying to the District Courts jurisdiction to enjoin the enforcement of the Act or regulations thereunder; and this feature of the Act purporting to vest exclusive jurisdiction in a court created for the purpose, subject to review by the Supreme Court, when challenged as violative of the Constitution, presents also a federal question.

"In view of these principles, appellant insists Section 204 (d) is effective and denies to the State Court all jurisdiction to consider the constitutionality of the substantive provisions of the Act or regulations pursuant thereto. The brief and argument for appellant is principally directed to this inquiry, and should be considered.

"Appellee's answer, in effect, is that the entire Act is unconstitutional, and this feature of the Act must fall with the whole.

"At bottom this view asserts jurisdiction in the State Court to decide the federal question, the constitutionality of the substantive provisions of the Act, the very question sought to be withdrawn from its jurisdiction, and strike down the withdrawal provision upon its findings touching the federal question involved.

"Apart from the provisions of the Act to the effect that the unconstitutionality of any provision of the Act should not affect other provisions, the logic of appellee's position is unsound. Such reasoning would defeat the power of Congress to withdraw from State Courts jurisdiction over a most vital federal question, the constitutionality of an Act of Congress, which can never be finally settled short of a decision by the Supreme Court of the United States. We consider Section 204 (d), dealing with jurisdiction of the State Court, a thing apart from the substantive provisions of the Act, a provision within the constitutional power of Congress. It results there was no jurisdiction in the State Court to deal with the constitutionality of the substantive provisions of the Act or regulations pursuant thereto, and such questions are not here for decision."

To the same effect see Diefenbaugh v. Cook, decided by the Superior Court of St. Joseph County, Indiana, on September 14, 1942.

We are of the opinion that the Emergency Price Control Act of 1942 validly delegates power to the admin-

istrator of the Office of Price Administration to promulgate maximum rent regulations.

As we understand it, the tests for determining the validity of legislative delegations of power to administrative agencies are as follows: (1) The statute must contain an understandable statement of policy or purpose which Congress seeks to accomplish; (2) the statute must contain an intelligible statement of the standards by which that policy or purpose is to be worked out; (3) the statute does not need to meet these tests so specifically that efficient administration will be hampered; Congress need specify only within the limits of reasonable practicability.

We quote from the decision of the United States Supreme Court in United States v. Rock Royal Cooperative, Inc. et al., 307 U. S. 533, at page 574:

"From the earliest days the Congress has been compelled to leave to the administrative officers of the government authority to determine facts which were to put legislation into effect and the details of regulations which would implement the more general enactments. It is well settled, therefore, that it is no argument against the constitutionality of an act to say that it delegates broad powers to executives to determine the details of any legislative scheme. This necessary authority has never been denied. In dealing with legislation involving questions of economic adjustment, each enactment must be considered to determine whether it states the purpose which the Congress seeks to accomplish and the standards by which that purpose is to be worked out with sufficient exactness to enable those affected to understand these limits. Within these tests the Congress needs specify only so far as is reasonably practicable."

The rent provisions of the Emergency Price Control Act clearly meet these tests. The act contains both a clear statement of a definite policy of Congress and adequate intelligible standards to guide the adminis-

trator in fixing maximum rents. The objectives of the act are fully set forth in section 1(a) thereof.

To effectuate these objectives the administrator is authorized to promulgate maximum price and rent regulations.

The standards to guide the administrator are set forth in section 2(b) and other sections of the act. His action must be necessary or proper in order to effectuate the purposes of this act. The regulations may apply only to defense area housing accommodations, that is, places rented for living or dwelling purposes in defense-rental areas. Defense-rental areas are only those localities where the administrator finds that defense activities have resulted or threaten to result in an increase in rents inconsistent with the purposes of the act. The rents fixed must be generally fair and equitable and such as will effectuate the purposes of this act. So far as practicable the administrator shall ascertain and give due consideration to the rents prevailing on or about April 1, 1941, or such other date not earlier than April 1, 1940, as in his judgment does not reflect increases in rents in the particular area inconsistent with the purposes of the act resulting from defense activities. In considering April 1, 1941, or other base date rentals, he is given authority to make adjustments for such generally applicable relevant factors as increases or decreases in property taxes and other costs. The regulation may contain such classifications and differentiations and and may provide for such adjustments and reasonable exceptions as are necessary or proper in order to effectuate the purposes of the act. The administrator is also authorized when necessary or proper to effectuate the purposes of the act to regulate or prohibit speculative, manipulative, or other practices, including eviction practices, which are equivalent to or likely to result in rent increases inconsistent with the purposes of the act. Before issuing a regulation the administrator must issue a declaration setting

forth the necessity for and recommendations with reference to the stabilization or reduction of rents for the area, and he may issue the regulation only if within 60 days after issuance of such declaration rents within the area have not in his judgment been stabilized or reduced by State or local regulations or otherwise in accordance with his recommendations. In designating defense-rental areas, establishing maximum rents therefor, and selecting personnel to administer the regulations, the administrator must so far as he considers practicable consider the recommendations of the State and local authorities.

The standards of the Emergency Price Control Act of 1942 as summarized above are as definite and detailed as they can be without defeating the objectives of the act.

Certainly, in legislation covering as broad a field as this, it cannot be persuasively argued that Congress must set forth in meticulous detail rules to govern every act and decision of the administrator.

In Henderson, etc., v. Kimmel, 47 Fed. Supp. 635, 642, a decision of a three-judge court of Kansas, after reviewing the standards set out in the act to guide the administrator, the court said:

"Congress must state, in so far as is reasonably practicable, the purpose which it seeks to accomplish and the standards by which that purpose is to be worked out. It may then constitutionally delegate to an administrative agency the powers to determine the details essential to carry out the legislative purpose."

See also to the same effect Helena Rubenstein, Inc., v. Charline's Cut Rate, Inc., 132 N. J. Eq. 254, 28 A. (2d) 113, a decision by the New Jersey Court of Chancery (Sept. 11, 1942), which concerned the validity of the price-fixing portions of the Emergency Price Control Act. This court said (p. 258):

"A legislative delegation of power to an administrative agency is constitutional when the legislation itself sets up the necessary standards which are required by

adjudications of the United States Supreme Court for the guidance of the agency created to administer the law."

Defendant's contention that a hearing must be held before a rent regulation is issued is without merit.

The establishment of maximum rents is a quasi-legislative rather than quasi-judicial function, since such regulations operate prospectively and establish rules of general conduct binding upon many persons. There is no constitutional requirement of a hearing prior to or in connection with the exercise of a quasi-legislative function: Bi-Metallic Investment Co. v. State Board of Equalization of Colorado, 239 U. S. 441 (1915); Highland Farms Dairy, Inc., et al. v. Agnew et al., 16 Fed. Supp. 575. (E. D. Va., 1936), aff'd 300 U. S. 608 (1937); State ex rel. State Board of Milk Control v. Newark Milk Co., 118 N. J. Eq. 504, 179 Atl. 116 (1935); Spokane Hotel v. Younger, 113 Wash. 359, 194 Pac. 595 (1920); United States v. George S. Bush & Co., Inc., 310 U. S. 371 (1940); Norwegian Nitrogen Products Co. v. United States, 288 U. S. 294 (1933); Buttfield v. Stranahan, 192 U. S. 470 (1904).

Nor is it necessary that there be proper findings of fact before the administrator promulgates a maximum rent regulation. In the first place section 2(b) of the act, under which maximum rent regulation no. 28 was issued, does require the administrator to issue a declaration setting forth the necessity for and recommendations with reference to the stabilization or reduction of rents within a particular defense-rental area and such declaration was issued in connection with maximum rent regulation no. 28: 7 Fed. Reg. 4913. Secondly, maximum rent regulation no. 28 itself contains appropriate findings of fact. And thirdly, the requirement of findings does not have to appear in the statute, it being sufficient (if findings are necessary at all) that they actually appear in the regulation. Cf. Pacific States Box & Basket Co. v. White et al., 296

U. S. 176; Thompson et al. v. Consolidated Gas Corp. et al., 300 U. S. 55, 59, 69; Rogge et al. v. United States, 128 F.(2d) 800 (C. C. A. 9th, 1942); and Opp Cotton Mills, Inc., et al. v. Administrator, etc., 312 U. S. 126, where the court said (p. 144):

"But where, as in the present case, the standards set up for the guidance of the administrative agency, the procedure which it is directed to follow and the record of its action which is required by the statute to be kept or which is in fact preserved, are such that Congress, the courts and the public can ascertain whether the agency has conformed to the standards which Congress has prescribed, there is no failure of performance of the legislative function."

The only decision to which our attention has been directed in conflict with the views expressed above is that of Roach v. Johnson (U. S. D. C., N. D. Indiana, Feb. 25, 1943).

The court in that decision was of the opinion that Congress has declared no policy and established no standards to guide the administrator, that the rent regulation was issued without any findings of fact, and that it was an improper delegation of legislative power.

We disagree with the court's conclusions in the light of the reasons hereinabove set forth.

We now pass to the question whether or not plaintiffs may sue for $50 for each payment of rent in excess of the legal maximum.

The plain meaning of section 205(e) of the Emergency Price Control Act of 1942 is that each separate payment of rent in excess of the ceiling is a separate violation. We think it clear that if an over-ceiling rent were charged for one rental period plaintiffs would have a cause of action, and likewise another cause of action for another over-ceiling rent charged for another rental period, and we know of no sound reason why these causes of action should not be joined in one action.

Also the recovery for a number of over-ceiling payments should not be in the same amount as for one. The

damage caused to a tenant and to the Nation as a whole in case of repeated violations is certainly more serious than in the case of a single violation. And it is basic in our law that the more serious the damage the greater the liability.

Three decisions of New Jersey courts have been called to our attention.

In Walters v. Melavas (Orange Dist. Ct., N. J.), decided in March 1943, the New Jersey court held that each overcharge results in a separate liability under section 205(e). The court said:

"Clearly, each separate monthly overcharge by the defendant landlord constitutes a separate and distinct violation of the regulation and gives rise to a separate and new cause of action.

"The language of section 205(e) clearly contemplates that the damages to be awarded to the consumer, purchaser or tenant are to be calculated upon the basis that each separate violation of a price or rent regulation constitutes a separate cause of action, upon which the tenant can recover treble the amount of the particular overcharge or fifty dollars, whichever be the greater."

In Rappa v. Domonkos, no. 70,559 in the District Court of the Second Judicial District of the County of Essex, the court said:

"From a very careful reading of the act, I have come to the conclusion that each monthly overcharge constitutes a separate violation."

In Weingart v. Freed, a recent decision in the First Judicial District Court of Middlesex County, the court said:

"However, I do rule that each violation is a separate cause of action and that the defendant-plaintiff on the counterclaim has five separate causes of action accruing under the statute for the months of August, September, October, November and December, 1942."

No decision has been called to our attention as being in conflict with the above decisions except the decision

of Whatley v. Love, First City Court, City of New Orleans, December 8, 1942. The facts in that case indicate that there were two overcharges of rent. The court entered judgment for the plaintiff in the amount of $50. However, it is to be noted that the plaintiff brought suit for only $50; therefore, the decision cannot be considered as an authority for the proposition that $50 is the extent of the recovery no matter how many overcharges of rent.

We are of the opinion that each separate violation of a rent regulation constitutes a separate cause of action upon which the tenant can recover treble the amount of the overcharge or $50, whichever be the greater, and that these causes of action may be joined in one action.

The last point raised by defendant is that, if section 205(e) does authorize a recovery of $50 for each violation, it is in conflict with the Eighth Amendment to the United States Constitution in that it provides for an excessive and unusual punishment.

The amendment provides as follows:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

This amendment clearly applies to criminal proceedings and so far as we are aware has never been held to apply to a civil remedial action.

In a prior opinion in this same case on March 1, 1943, we ruled that this action was not an action to collect a penalty, but was an action for remedial damages: 46 D. & C. 657.

Provisions similar to section 205(e) are common in the statutes of the United States and have been consistently sustained by the Supreme Court of the United States.

There are treble damage provisions in the United States patent laws, the United States trade-mark laws, the Sherman Anti-Trust Act and the Clayton Act, and the anti-dumping provisions of the Revenue Act of

1916. A Federal statute relating to seamen allows recovery of a sum equal to two days' pay for each day by which wage payments are delayed beyond the statutory time limit: Act of December 21, 1898, R. S. sec. 4529, as amended, 46 U. S. C. §596. And the Fair Labor Standards Act provides for the recovery of double the statutory underpayment where wages in an amount less than the prescribed minimum have been paid: Fair Labor Standards Act of June 25, 1938, 52 Stat. at L. 1060, 29 U. S. C. §201. Statutes providing for a minimum recovery have also been sustained by the Supreme Court: St. Louis, Iron Mountain & Southern Ry. Co. v. Williams et al., 251 U. S. 63 (statute provided for recovery by the party overcharged of not less than $50 nor more than $300 for each overcharge by a railroad; judgment of $75 plus $25 attorney's fees and costs upheld where total overcharge was $1.66); Seaboard Airline Rwy. v. Seegers, 207 U. S. 73 (recovery of $50 for a loss of $1.50 under statute providing for such recovery where railroad failed to make prompt settlement of claim); Yazoo & Mississippi Valley R. R. Co. v. Jackson Vinegar Co., 226 U. S. 217; Waters-Pierce Oil Co. v. Texas (No. 1), 212 U. S. 86 ($1,500 plus $50 per day for violating State antitrust act).

For the reasons set forth above we hold that the Emergency Price Control Act of 1942 does not violate the Eighth Amendment to the Constitution of the United States, and further that it does not provide for an excessive and unusual punishment.

In view of the foregoing, we make the following

### Order

And now, to wit, April 22, 1943, the questions of law raised by the affidavit of defense filed in this case on March 15, 1943, are overruled and are hereby decided against defendant, and the defendant is given 15 days' additional time in which to file a supplemental affidavit of defense to the merits thereof.